Rosemary L. **UMBRIAC** et al.
v.
**AMERICAN SNACKS, INC.,** et al.
Civ. No. 74-549.

United States District Court,
E. D. Pennsylvania.
Jan. 27, 1975.

Richard A. Ash of Lyman & Ash, Philadelphia, Pa., for plaintiffs.

David Berman, Medford, Mass., Matthew J. Broderick and Warren Vogel of Dechert, Price & Rhoads; Michael L. Temin of Wolf, Block, Schorr & Solis-Cohen; Howard D. Scher and Allen J. Levin of Goodis, Greenfield, Henry, Shairman & Levin, Philadelphia, Pa., for defendants.

## OPINION

HIGGINBOTHAM, District Judge.

This is a class action and I must presently decide whether to grant defendants' motion to transfer this case from the Eastern District of Pennsylvania to the District of Massachusetts under 28 U.S.C. § 1404(a) after having denied a similar motion to transfer in an individual action involving many of the same parties, the same factual allegations, and the same cause of action. For reasons hereinafter discussed, I am granting defendants' transfer motions in spite of my ruling in the individual action brought by the same named plaintiffs. A brief statement of the procedural history of the two actions will facilitate a clear understanding of the present issue.

## PROCEDURAL HISTORY

On August 27, 1973, the four named plaintiffs in the above-captioned complaint filed an individual action [1] under the Securities Exchange Act of 1934 against American Snacks, Inc. (hereinafter "ASI") and the accounting firm of Touche Ross & Co. (hereinafter "Touche

1. Umbriac v. American Snacks, Inc., Civil No. 73–1928 (E.D.Pa. filed August 27, 1973.)

Ross"). Plaintiffs' claims in that litigation arise out of their purchase of twenty-five debentures from ASI in March, 1969, each one having a face value of $1,000, bearing 6% interest annually, and maturing in 1989. The complaint alleges that ASI's offering prospectus was misleading in that, among other things, the prospectus (1) overstated the value of the assets; (2) misrepresented the character of the assets; and (3) inflated the earnings of ASI in previous years. Touche Ross was the accounting firm responsible for certifying the financial statements of ASI.

On October 3, 1969, ASI allegedly issued a "News Release," reporting that ASI would "write off" $1,100,000 of corporate assets "net of taxes" which was based upon a re-evaluation of the assets. Consequently, the debentures offered earlier dropped substantially in value. Twenty of plaintiffs' twenty-five debentures were thereafter sold for approximately $500 per debenture, or 50% of their original investment. By that action plaintiffs seek, *inter alia*, a rescission of the sale of the remaining five debentures which they retain, and compensatory damages for the loss incurred by their past sale of the debentures at a reduced value. ASI and Touche Ross thereafter moved to transfer the action to Massachusetts under 28 U.S.C. § 1404(a), and as to the individual action I denied the motion by Memorandum and Order dated August 15, 1974.

On March 6, 1974, the same four named plaintiffs filed this class action against ASI and Touche Ross reciting the same allegations in their complaint and requesting the same relief as had been requested in the individual action. Additionally, the complaint impleaded directors of ASI as well as the managing underwriter of the debenture issue in question, the firm of Scherck, Stein & Franc, Inc. (hereinafter "Scherck"), located in St. Louis, Missouri. The class

which plaintiffs purport to represent are ". . . the class of persons and entities who purchased 6% convertible subordinated debentures due 1989 issued by Snacks ('the debentures') during the period beginning at the date of original issue (on or about March 15, 1969) and ending October 3, 1969, who either continue to hold the debentures or who have sold the debentures after October 3, 1969, at a loss."[2] Again in this action ASI and Touche Ross have moved to transfer the case to Massachusetts under § 1404(a).[3] Therefore, I must decide, in essence, whether after denying the motion to transfer in the individual suit, the status of plaintiffs' present case as a class action and the impleading of the additional defendants now tips the balance of convenience and justice away from the Eastern District of Pennsylvania forum and in favor of the District of Massachusetts.

### MOTIONS TO TRANSFER UNDER 28 U.S.C. § 1404(a).

28 U.S.C. § 1404 provides in relevant part:

> "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

From the language of the statute I must make two determinations in considering defendants' transfer motions. I must first determine whether Massachusetts is a district wherein this civil action might have been brought at the time it was commenced in this forum. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L. Ed.2d 1254 (1960); Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970); Goodman v. Fleischmann, 364 F.Supp. 1172 (E.D.Pa.1973). Next I must determine whether a transfer will be in the interest of justice and for the convenience of parties and witnesses.

---

2. Plaintiffs' Complaint, Doc. #1 at 2.

3. Samuel H. Jaffee, one of the individual defendants, joins in the motion of ASI, but he presents no additional grounds in support thereof.

The first determination is easily made, for in plaintiffs' action venue is based on § 27 of The Securities Exchange Act of 1934, 15 U.S.C. § 78aa, which states in pertinent part:

" . . . Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."

ASI has its principal place of business in Chelsea, Massachusetts: the office of Touche Ross which conducted audits for the offering prospectus is located in Wellesley, Massachusetts; and at least four of the eight named defendants reside in Massachusetts. Clearly, this suit could have been brought in the Massachusetts district under the venue provision of § 78aa.

Next I must determine whether a § 1404(a) transfer to Massachusetts will be in the interest of justice and for the convenience of parties and witnesses. I find the following factors weighing in favor of the transferee forum.

1. ASI has its principal place of business located at Chelsea, Massachusetts.

2. The office of Touche Ross which conducted the audit for the offering prospectus is located at Wellesley, Massachusetts.

3. Four of the eight individual defendants reside in Massachusetts, two reside in Missouri, and one resides in Florida.[4]

4. The offering prospectus was prepared in part from financial statements audited by an office of K. Lasser &

Company located in Boston, Massachusetts.

5. The offering prospectus was prepared in Boston by ASI's general counsel, the firm of Nathanson & Rudofsky, which is also located in Boston.

6. The corporate records used to prepare the offering prospectus are located at ASI's offices in Chelsea, Massachusetts.

7. Defendant ASI lists three party witnesses and one non-party witness, whose testimony will be necessary at trial on the issues of the valuation and character of ASI's assets and the preparation of ASI's financial statements for the years of 1964 through 1968. All these witnesses reside and work in Massachusetts and are officers of ASI.

8. On the issue of the $1,100,000 write-off alleged in plaintiffs' complaint, defendant ASI intends to call its principal officers and directors during the period, December 28, 1968 to March 15, 1969 (the eight named defendants), as well as three non-party witnesses. Two of these non-party witnesses reside in Massachusetts and the third witness resides in Missouri.

9. ASI alleges that the testimony of substantially all of the company's major executives will be required to refute plaintiffs' allegations and that while the number of individuals involved is not large, it represents substantially all of the company's executives, without whom the company would be unable to operate.

10. Complete records of all transactions in the ASI debentures are maintained by the First National Bank of Boston located in Boston, Massachusetts.

In behalf of plaintiffs' opposition to the motion to transfer, I find that:

1. The debentures were purchased by plaintiff, Cletus M. Lyman, for his children through the Trenton, New Jersey office of Merrill, Lynch, Pierce, Fenner & Smith.

---

4. The eighth individual defendant, Stanley H. Rosensweig, held an ASI directorship from December 28, 1968 through March 15, 1969.

His present address is listed as unknown. Affidavit of Philip Segal, Doc. #26, Exhibit A at 3.

2. Cletus M. Lyman then resided in Hazelton, Pennsylvania, and the individual stock broker through whom the purchase was made resided in Bucks County, Pennsylvania.

3. Plaintiffs have no substantial contacts with Boston.

4. Plaintiffs have offered to depose Boston witnesses in Boston and to examine and photocopy documents there.

5. ASI conducts business in 30 states including Pennsylvania. 5.35% of ASI's sales revenues for the first nine months of 1973 was derived from within Pennsylvania and 5.77% of its employees and 4.59% of its restaurant units are located in Pennsylvania. ·

In making my second determination I must strike a balance of convenience between those elements of this lawsuit which weigh in favor of transferring it to Massachusetts, and those which favor allowing plaintiffs' choice of forum to stand undisturbed. The factors to be considered have been recited many times but the basic enunciation is ultimately traced to Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), where Mr. Justice Jackson, although discussing the principle of *forum non conveniens*, set forth analytical guidelines which are equally applicable to transfer determinations made under § 1404(a). Cf. Van Dusen v. Barrack, 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11 L. Ed.2d 945 (1964).

The factors relevant to the instant case are (1) plaintiffs' choice of forum; (2) relative ease of access to sources of proof; (3) the cost of obtaining attendance of willing witnesses; and (4) practical considerations in making the trial easy, expeditious and inexpensive. See also Goodman v. Fleischmann, *supra*, 364 F.Supp. at 1175.

In plaintiffs' individual action I determined that the balance of convenience favored the present forum, but on the present motion this action differs in two relevant respects—class relief is requested and additional defendants have been impleaded. The joinder of the St. Louis corporation and former directors of ASI who now reside in Missouri and Florida does move the center of convenience somewhat farther from the Eastern District of Pennsylvania although clearly not in the direction of Massachusetts. No motion to transfer has been filed requesting a change of venue to either Florida or Missouri, and consequently, I must strike the balance of convenience only between the Massachusetts and Pennsylvania forums as sites for the trial. Since the Massachusetts forum is not significantly less inconvenient geographically than Philadelphia as to these defendants, I find that their joinder does not alter the balance struck in the individual action favoring plaintiffs' choice of forum. The class action nature of this suit, however, is a factor which I must give greater weight than the joinder of additional defendants in deciding the transfer issue. In rendering my decision on the transfer motion in the individual action I recognized plaintiffs' choice of forum should not be lightly disturbed but I went on to state:

> "One factor influencing the Court's judgment and seriously militating against a transfer is that this action, though prosecuted under the relevant securities laws, does *not* seek derivative or class relief. The Court is fully aware—and in fact has itself held in Polin v. Conductron Corp., 340 F. Supp. 602, 604–605 (E.D.Pa.1972)— that a plaintiff's choice of forum is less controlling when the suit is of a derivative nature." [5]

Therefore I must begin my analysis here by considering the extent to which the representative nature of this suit abrogates the weight formerly given to plaintiffs' choice of forum.

In Koster v. Lumbermens Mut. Casualty Co., 330 U.S. 518, 524, 67 S.Ct. 828, 831–832, 91 L.Ed. 1067 (1947), the

---

5. Umbriac v. American Snacks, Inc., Civ.No. 73–1928 (E.D.Pa., August 15, 1974) (Slip Opinion at 3–4.)

companion case with Gulf Oil Corp. v. Gilbert, *supra*, Mr. Justice Jackson writing for a five to four majority of the Supreme Court discussed at length the legal standards of convenience and justice in determining the appropriate venue in representative actions:

"Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems. In any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown. But where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."

Mr. Justice Jackson went on to discuss other aspects of representative suits that in many instances tend to undermine the theoretical foundation upon which judicial deference to plaintiff's choice of forum is predicated: plaintiffs' lack of personal knowledge which would help to make whatever case can be made against defendants; the forum court's responsibility toward the whole class which plaintiff presumes to represent; the likelihood that only the corporate defendant's books, records and transactions will be important (as compared with plaintiff's personal records) and that only the defendant will be significantly affected by the choice of the place of production of records. Of course, the plaintiff in *Koster* was prosecuting a derivative stockholder suit, but the circumstances of the present class action are sufficiently analogous to those in *Koster* that the same reasoning is applicable here. The purchase of debentures and plaintiffs' reliance upon the offering prospectus must be determined at trial, and these issues require proof derived primarily from plaintiffs' personal knowledge. However, the issues which predominate in this case are whether the offering prospectus was materially misleading as enumerated in plaintiffs' complaint.[6]

In Firmani v. Clarke, 325 F.Supp. 689, 692 (D.Del.1971) Judge Latchum was confronted with a motion to transfer a class action securities case substantially similar to the present one. In consider-

---

6. "The prospectus was materially misleading in that, *inter alia*:

(a) it overstated the value of the assets of Snacks as of December 28, 1968;

(b) it misstated the character of the assets of Snacks of December 28, 1968;

(c) it overstated the earnings of Snacks for the years ending in December of 1964, 1965, 1966, 1967 and 1968;

(d) it failed to state the loss in value and change in character of assets from December 28, 1968 to the date of issue of the prospectus (approximately March 15, 1969);

(e) it used the label 'debentures' and thereby falsely implied that the debentures were

sound debt securities as opposed to risk, venture capital securities;

(f) it falsely manifested that transactions between Snacks and various affiliated parties, including officers and directors and entities controlled by officers and directors, were fair and reasonable transactions;

(g) it falsely manifested that several divisions of Snacks were growing and profitable and that the company as a whole was expanding profitably." (Plaintiffs' Complaint, Doc. #1 at 3, 4.).

ing the possible shifting of inconvenience from the shoulders of the defendants to those of the plaintiffs he observed:

" . . . [I]n a class action such as this the testimony offered by the plaintiff is likely to be minimal, probably no more than a recitation of the circumstances under which he purchased his stock. The critical evidence, both testimonial and documentary, to sustain the claims of the complaint must come from other sources, particularly from documents within the defendants' control, . . . ."

 Plaintiff contends that my denial of defendants' transfer motions in the individual actions should control the result in this class action as well because defendants have demonstrated no greater inconvenience to themselves in this suit than they were able to show in their motions in the individual action. The convenience test is a comparative analysis between the relative conveniences and burdens of the plaintiffs' choice of forum and the forum requested by the defendants. Defendants need not show inconvenience on any absolute judgmental scale. However, conceding that defendants' quantum of proof is of no greater magnitude than that produced on the prior motion, I find that they have met their burden of persuasion in this class suit since I must give considerably less weight to plaintiffs' choice of forum here than was accorded in the individual action. Polin v. Conductron Corp., 340 F.Supp. 602, 605 (E.D.Pa. 1972). I conclude that defendants are entitled to a transfer of this action to the United States District Court for the District of Massachusetts under 28 U.S. C. § 1404(a), and therefore defendant's motions to transfer will be granted.

## RULE 23 CLASS DETERMINA-
## TION ISSUES

At this juncture I also have before me plaintiffs' motion for a judicial determination that their suit may be maintained as a class action as prescribed by Fed. R.Civ.P. 23. During oral argument on defendant's transfer motions, plaintiffs argued that their motion for a class determination should be decided as part of my adjudication of the transfer motions because the defendants rely so heavily upon the representative nature of this suit in distinguishing the legal issues raised in this motion from those raised in the transfer motion of the individual action. Also they contend that defendants would be entitled, if the class determination issue is not resolved here and the transfer motions are granted, to argue for the defeat of plaintiffs' class determination motion thus, conceivably, undermining the *ratio decidendi* of my adjudication on the transfer issues. Defendants argue that since plaintiffs have denominated their action a class suit, the transfer motions should be adjudicated without awaiting a decision on the Rule 23 issues raised by the class determination motion.

Although I am not required to adjudicate these motions in any specific sequence, I would naturally be inclined to resolve the class determination issues if they were also dispositive of defendants' transfer motions. On the other hand, I am cautious not to pre-empt a decision by the transferee judge on issues that may be crucial to the efficient management of the action and about which the transferee judge may take a view different from mine. I have decided therefore to include in this opinion my analysis of the Rule 23 issues raised by the parties on the class determination motion. This analysis, however, is advisory and will not be binding on the transferee judge who can therefore exercise his independent judgment on these issues. I do this not intending to in any way intrude on the transferee judge's prerogatives, but I express an opinion because so often I have been the transferee judge and wanted to know what thought or tentative conclusions had been reached by the transferor judge before whom complex

matters had been argued. See, In Re: Japanese Electronic Products Antitrust Litigation, M.D.L. No. 189 (E.D.Pa., filed November 29, 1974); In Re: Air Crash Disaster Near Pellston, Michigan on May 9, 1970, 357 F.,Supp. 1286 (E.D. Pa., filed April 23, 1973); In Re: Professional Hockey Antitrust Litigation, 352 F.Supp. 1405 (E.D.Pa., filed January 18, 1973).

The various defendants advance four basic arguments in opposition to plaintiffs' class determination motion. Defendants ASI and Scherck contend that I should deny plaintiffs' motion as untimely filed in violation of Local Rule 45(c).[7] I recognize there is broad discretion vested in the district courts to enforce compliance with local rules of court promulgated under Fed.R.Civ.P. 83 and that in the exercise of that discretion Judge MacMahon in Walker v. Columbia University, 62 F.R.D. 63 (S.D.N.Y.1973), denied plaintiffs' class determination motion for failure to timely file in compliance with the local rules of the United States District Court for the Southern District of New York. In this instance, however, I adopt the view of Judge Lasker in Gilinsky v. Columbia University, 62 F.R.D. 178, 180 (S.D.N.Y.1974), that plaintiffs' failure here is a *"de minimis* lapse" and that denial of their motion is unwarranted under the circumstances.

ASI argues that the complexity of applying statutes of limitation, which may differ as to individual class members, demonstrates that in this instance a class action is not superior to other available methods as required by Fed.R. Civ.P. 23(b)(3).[8] A similar argument is made by Scherck and Touche Ross as to the substantive issue of whether the representative parties relied upon the alleged misrepresentations contained in the offering prospectus in purchasing the ASI debentures. Defendants have submitted evidence which they imply conclusively proves that plaintiffs did not rely upon the alleged misrepresentation and therefore they contend the claims of the representative parties are not typical of those of the class they propose to represent.

Defendants have not cited in their briefs any case which even suggests that the existence of these individual statute of limitations and reliance issues precludes maintenance of a class action, but to the contrary, the weight of authority is clearly against defendants' position. Lamb v. United Security Life Co., 59 F. R.D. 25, 34–37 (S.D.Iowa, 1972); Cohen v. District of Columbia National Bank, 59 F.R.D. 84, 90 (D.D.C.1972); Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y. 1968).

The arguments which defendants advance in this securities case in opposition to plaintiffs' class determination motion do not raise novel issues, for these same arguments against the maintenance of securities fraud class actions

---

7. "Within 90 days after the filing of a complaint in a class action, unless this period is extended on motion for good cause appearing, the plaintiff shall move for a determination under subdivision (c)(1) of Rule 23, F.R.Civ.P., as to whether the case is to be maintained as a class action. In ruling upon such a motion, the Court may allow the action to be so maintained, may disallow and strike the class action allegations, or may order postponement of the determination pending discovery or such other preliminary procedures as appear to be appropriate and necessary in the circumstances. Whenever possible, where it is held that the determination should be postponed, a date will be fixed by the Court for renewal of the motion before the same judge." Local Rules, United States District Court for the Eastern District of Pennsylvania, Rule 45(c).

8. Fed.R.Civ.P. 23(b) reads in pertinent part: "(b) Class Actions Maintainable. An action may be maintained as a class action if
 * * * * *
"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

due to individual issues of statute of limitations defenses and of reliance upon alleged misrepresentations have been made since the promulgation of the new Rule 23 in 1966. In Dolgow v. Anderson, *supra,* 43 F.R.D. at 490, the exhaustive landmark decision on class action determination issues decided soon after the 1966 amendments to Rule 23 had become effective, Judge Weinstein said:

> "In spite of this abundance of common questions, defendants argue that each member of the class would have to prove reliance, compliance with the statute of limitations, and damages, and thus the common questions cannot be said to predominate over those affecting individual members. To 'acknowledge defendants' position at this point would be, in effect, an emasculation of the vitality and pliability of the amended rule.' Siegel v. Chicken Delight, Inc., 271 F.Supp. 722, 727 (N.D.Cal.1967). The common issues need not be dispositive of the entire litigation. The fact that questions peculiar to each individual member of the class may remain after the common questions have been resolved does not dictate the conclusion that a class action is not permissible."

Lamb v. United Security Life Co., *supra,* 59 F.R.D. at 34, echoes this principle that " . . . such individual issues, unless they predominate . . . do not and must not preclude class actions, given the exceptional importance, superiority and desirability of the private 10b–5 action."

Defendants have made no showing that the statute of limitations issues or the reliance issues predominate to such an extent as to require denial of plaintiffs' class determination motion. To the contrary, defendants ASI and Touche Ross have argued on their motions to transfer that it is the very predominance of issues common to the entire class which necessitates my transferral of this action from this District to Massachusetts. I am not persuaded to take the opposite view on the class determination motion.

I recognize that identification of the legal issues raised by the complaint is necessary to apply the criteria of Rule 23, but plaintiffs filing of a class determination motion is not an invitation to engage in a plenary inquiry into the substantive issues raised by the complaint. In deciding whether a class action may be maintained under Rule 23 the district court need not explore the merits of plaintiffs' claims or the merits of defendants' defenses. B & B Investment Club v. Kleinerts, Inc., 62 F. R.D. 140, 144 (E.D.Pa.1974) (See cases cited therein). Indeed, a class action may be proper under Rule 23 even though it may still be dismissed for failure to state a cause of action. Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir. 1970) cert. den. sub. nom. Glen Alden Corp. v. Kahan, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970). Defendants' arguments as to the reliance and statute of limitations issues are clearly inappropriate on this class determination motion. They go to the merits of plaintiffs' claims and of defendants' defenses and they invite premature determinations on issues that are appropriate to motions to dismiss, motions for summary judgment, or which must be resolved at trial. Also a finding that the mere presence of these individual issues precludes a class determination in the present case would be tantamount to a holding that securities fraud cases cannot be maintained as class actions, since the existence of these individual issues is characteristic of most class actions for securities fraud under the Securities Exchange Act. Green v. Wolf Corp., 406 F.2d 291, 361 (2d Cir. 1968).

ASI and Scherck contend a conflict of interests exists between two subclasses of debenture holders which plaintiffs propose to represent, consisting of those debenture holders within plaintiffs' class who have sold their ASI debentures and those who still retain their interest in ASI. Relying upon Wood v. Rex-Noreco, Inc., 61 F.R.D. 669 (S.D.N.Y.1963), these two defendants argue that the potential recovery of the class would have

a major impact on the financial position of ASI and that although this would not affect the interests of those who have no interest in ASI, the interest of present debenture holders of ASI might be adversely affected by a substantial money judgment in this action. In Wood v. Rex-Noreco, Inc., *supra*, the representative parties were common shareholders who retained their securities in the defendant corporation, but who sought to represent a class of shareholders who had realized losses on the sale of their stock. The representative parties there had not realized any monetary loss at the time the motion was decided and Judge Bonsal denied the plaintiffs' class determination motion because of a potential conflict of interest between the former shareholders who had realized a loss and the representative parties who at that time retained their common stock. Although Judge Bonsal did not discuss in detail the nature of the conflict, his citation to the cases of Puharich v. Borders Electronics Co., Inc., 11 F.R.Serv.2d 23a.52, case 5 (S.D.N.Y. 1968) and Mutual Shares Corp. v. Genesco, 384 F.2d 540, 546 (2d Cir. 1967) indicates a legal rationale different from that upon which defendants here rely. Mutual Shares Corp. v. Genesco, Inc., *supra*, held that non-selling shareholders may not recover damages in a Rule 10b–5 action; Puharich v. Borders Electronics Co., Inc., *supra*, held that since the representative parties there were limited to injunctive relief under the *Genesco* doctrine, they were not entitled to represent selling shareholders who might be entitled to damages if liability were proven. In both *Wood* and *Puharich* the representative parties did not have a financial interest in pursuing the potential damage claims of the class they sought to represent, and therefore they were not sufficiently representative of members of the class to insure an adequate protection of class interests. Fed. R.Civ.P. 23(a). Here, the named plaintiffs are representative of both subclasses having allegedly suffered a loss on their debentures by sale and by the depreciation of those debentures they still own, and there is no basis for me to assume that they will not fairly and adequately protect the interest of both the selling and the non-selling debenture holders.[9]

Also, the substance of defendants' argument is that some of the debenture holders may prefer not to be parties to a suit which might impair their present investment in ASI. The "conflict of interests" between the two subclasses which defendant announces is grounded upon speculative assumption that ASI debenture holders will choose to forego their legal interest in possible damages for securities fraud against ASI in favor of protecting their present financial interest with ASI. Individual class members may ultimately arrive at the decision that defendant predicts, but I cannot make any assumptions as to whether all, most, or only a few of these debenture holders would prefer to throw their lot with ASI rather than with the named plaintiffs. In any case, each will have an opportunity to opt out of the class under Fed.R.Civ.P. 23(c)(2) if a class determination is made.

I find that plaintiffs' inclusion of non-selling debenture holders within the proposed class does not preclude the maintenance of this suit as a class action and does not create such a conflict of interest within the class to require class subdivision at this point in the litigation.[9(a)] *Cf.* Kahan v. Rosenstiel, *supra*, 424 F.2d at 169; Entin v. Barg, 60 F.R.D. 108, 115 (E.D.Pa.1973).

9. Plaintiffs' complaint requests both damages caused by losses on sales of debentures and caused by debenture depreciation. They have also requested rescission of the sales contract between ASI and class members who presently hold ASI debentures.

9(a). Of course here we are dealing with only a class of debenture holders, and thus this case is different from those where a debenture holder attempts to also represent stockholders.

Touche Ross contends that a conflict of interest exists between the representative parties and the class because the named plaintiffs, Cletus Lyman, Esquire, is an attorney and partner with counsel for plaintiffs, Richard A. Ash, Esquire, in the law firm of Lyman & Ash. The remaining named plaintiffs, defendants claim, are "siblings" of Cletus Lyman. It is in the nature of the motion practice on class determination issues that defendants, who naturally have no interest in the successful prosecution of the class suit against them, are called upon to interpose arguments in opposition to class determination motions verbally grounded upon a concern for the "best" representation for the class while the implicit, but nonetheless real, objective of their vigorous legal assaults is to insure "no" representation for the class. Of course I must assess defendants' argument upon its intrinsic merit, but on this issue it is my judgment that Lyman's status as an attorney, his business relationship with counsel for plaintiffs, and his family relationship with the other named plaintiffs do not create interests which are adverse to those of the class, and thus neither the named plaintiffs nor counsel for plaintiffs should be disqualified from class representation. Although Cletus Lyman may benefit through his partnership in the law firm of Lyman & Ash from an award of legal fees, if plaintiffs are successful in the present litigation, this interest does not in my opinion create substantially more of a risk that the suit would be compromised unfairly as respects class interests than would exist if there were no relationship between the representative parties and counsel for plaintiffs. The vision of substantial counsel fees might cloud the judgment of counsel for plaintiffs and the representative parties but the court does not in granting a motion for class

determination entrust to the representative parties ultimate responsibility for determining the fairness to the class of settlement decisions which compromise class interests. Any compromise or dismissal of a class action must be approved by the court and notice of the proposed compromise or dismissal must be given to all class members; judicial approval should be granted only after the court determines that the compromise is in the interest of the entire class. Fed.R.Civ.P. 23(e).[10] Euresti v. Stenner, 458 F.2d 1115 (10th Cir. 1972). In my estimation the safeguard provided in Rule 23(e) against litigation compromises unfair to the class as a whole are adequate to insure protection of class interest under the representation of these named plaintiffs and counsel. Kramer v. Scientific Control Corp., 365 F.Supp. 780 (E.D.Pa.1973) (See also Slip Opinion of October 1, 1974).

Finally, ASI and Scherck contend that due to plaintiffs' maintenance of an individual suit on the same cause of action, plaintiffs cannot fairly and adequately protect the interests of the class; defendants express concern that plaintiffs could prosecute or compromise their individual claims without the accountability mandated by Rule 23(e). I am concerned about the appropriateness of the representative parties maintaining a separate individual action on the identical claims made in the class suit. Since the class action is to be transferred to Massachusetts and the individual action is to remain in this district, the bifurcation of control of the two suits clearly presents practical obstacles to protection of the class from a compromise of representative party claims which could adversely affect the claims of the class. Specifically, a compromise of the claims of the representative parties in the individual suit could deprive the class of representation by removing

---

10. Fed.R.Civ.P. 23(e) reads:
"Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and no-
tice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."

the requisite standing of these parties to further prosecute class claims.

However, plaintiffs have moved to have the individual action consolidated with the class suit. A consolidation of the two cases would remove my concerns that a potential compromise of the representative party claims might be effected beyond the reach of Rule 23(e). The motion for consolidation was filed before my decision on defendants' transfer motion in the class suit and the granting of that motion at this juncture would mean that both the individual and the class actions would be subject to my transfer order. Plaintiffs have three basic options at this point: (1) they may continue to press their motion to consolidate the two actions and thus have the entire litigation transferred to Massachusetts; (2) they may withdraw their motion to consolidate and risk a determination by the transferee judge that the class determination motion must be denied because of the maintenance of the individual suit; or (3) they may prefer to voluntarily dismiss the class suit in favor of pursuing their individual claims in this forum. In order to give plaintiffs an opportunity to consider these options, I am delaying the entry of my transfer order. I am entering an order setting a pretrial conference at which time counsel for plaintiffs will advise the Court and the other parties of his intentions in this matter in light of my ruling on defendants' transfer motions and my advisory opinion upon plaintiffs' motion for class determination.

## CONCLUSION

I conclude that considering the representative nature of plaintiffs' suit a transfer under 28 U.S.C. § 1404(a) of this case from the Eastern District of Pennsylvania to the District of Massachusetts will promote the convenient, efficient, and expeditious trial of the issues in this litigation and will be in the interest of justice.