James L. SHORES, as Executor of the Estate of Clarence E. Bishop, Deceased, Ronald Ham and John D. Churchwell, on their own behalf and on behalf of all persons similarly situated, Appellees,

v.

FIRST CITY BANK CORP., formerly known as City National Bank and Trust Company of Oklahoma City, a National Banking Association, Appellant.

No. 58244.

Supreme Court of Oklahoma.

Oct. 10, 1984.

As Corrected Oct. 26, 1984.

Ritchie & Rediker by J. Michael Rediker, Birmingham, Ala., and Jackson, Hall & Zorn by Daniel Zorn, Oklahoma City, for appellees.

Linn, Helms, Kirk & Burkett by B.J. Rothbaum, Jr., Oklahoma City, for appellant.

HODGES, Justice.

This is an appeal authorized by 12 O.S. 1981 § 993(a)(6) from an order of the trial court certifying the action pending below as a class action under 12 O.S. 1981 §§ 13 and 14. The question to be decided is whether the trial court abused its discretion in granting class action status.

The plaintiffs-appellees [bondholders] brought this action against the defendant-appellant [bank] on their own behalf and on behalf of similarly situated holders of Series A 1972 Bonds issued by the Arkansas Valley Environmental and Utility Authority. The bonds are in default. Their petition alleges that the bank was the trustee under the trust indenture for that bond issue. It is alleged that by reason of the bank's failure to live up to its obligations as trustee and its activities in breach of that trust, the trust estate, of which the bondholders are beneficiaries, suffered damage and depletion. It is further alleged that the bank is in possession of funds belonging to the trust estate which should be distributed to the bondholders, and that the bank should be required to pay interest on those funds. For these alleged violations of its trust, the bondholders allege that the bank should respond in both compensatory and punitive damages.

Upon motion of the bondholders, pursuant to 12 O.S. 1981 § 14, the trial court, noting that these same plaintiffs have prosecuted a similar class action against the issuing authority, and the promoters and underwriters of the bonds in federal court in Alabama,[1] ruled that the requirements

---

1. *Shores v. Arkansas Valley Environmental and Utility Authority,* 1979–80 CCH Fed.Sec.L.Rep. ¶ 97,345 (N.D.Ala.1980).

for class certification were present and issued the order appealed here.

■ We have had occasion to address the issue of class certification under our statutes only on two prior occasions, but it is clear that in order for appellant to succeed in this appeal it must demonstrate that the trial court abused its discretion in certifying this class action. *Perry v. Meek*, 618 P.2d 934 (Okla.1980), and *Mattoon v. City of Norman*, 633 P.2d 735 (Okla.1981). However, if the record does not support the conclusion that each of the five prerequisites set forth in Section 13 is present, then certification by the trial court was incorrect, and its action would be an abuse of discretion. *Mattoon v. City of Norman*, supra.

■ Our class action scheme closely parallels that provided in Rule 23 of the Federal Rules of Civil Procedure, and we may look to federal authority for guidance and enlightenment as to its rationale. *Mattoon v. City of Norman*, supra. However, there are some significant differences which must be recognized in reaching a determination in this case. The federal rule allows a class action where four essential prerequisites are met and in addition the case meets at least one of three additional criteria.[2] Our legislature adopted the four federal prerequisites in a slightly modified form and has required as a fifth prerequisite the meeting of the third "optional" federal criteria, here, the predominance of common questions of fact and law over individual questions and superiority of class action over other methods of resolving the dispute.[3]

**2.** Rule 23, Federal Rules of Civil Procedure, provides in pertinent part:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

\*  \*  \*  \*  ·  \*  \*

**3.** 12 O.S.1981 § 13 provides:

Class actions—Damages—Orders

"A. One or more members of a class may sue or be sued as representative parties on behalf of all if:

"1. The class is so numerous that a joinder of all members, whether otherwise required or permitted, is impracticable;

"2. There are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"3. The claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. The representative parties will fairly and adequately protect the interests of the class; and

"5. A class action is superior to other available methods for the fair efficient adjudication of the controversy.

"B. In a class action, recovery shall be limited to any actual damage sustained by any member of the class, together with such other amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and any recovery for penalty or minimum recovery otherwise provided by statute in such action shall not be more than the

■ Therefore, we may rely upon federal authorities insofar as they relate to the four prerequisites of Rule 23, and the provisions of Rule 23(b)(3) which corresponds to Subsection 5 of our statute. We shall take as true all uncontroverted allegations in the instruments of record and the undenied statements of counsel in the briefs. *Perry v. Meek*, supra; *Mattoon v. City of Norman*, supra; and *Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975) cert. den. 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75.

## I

### Subsection 1.

The first prerequisite is that the class be "... so numerous that a joinder of all members, whether otherwise required or permitted, is impracticable." The bank argues that this prerequisite has not been met. It suggests that Oklahoma's "opt-in" scheme, which is substantially similar to the "spurious" class action under the old federal rule, is really a permissive joinder statute. It says that joinder in the traditional method of individual intervention has not been shown to be "impracticable".

■ The class of bondholders defined by the trial court's order encompasses approximately 115 owners, including the plaintiffs, of whom about 80 have been tentatively identified and located, according to the records of the Alabama action. These owners are residents of approximately 21 different states. While the size of the class in this case falls within the range which ordinarily has resulted in class certification,[4] a finding that the class is sufficiently numerous under this prerequisite

need not rest on class size alone. Whether a class meets this "numerosity" requirement must be determined upon the facts of each case. Impracticability, as it is used here, does not mean impossibility, but extreme difficulty or inconvenience of joinder must be found. *Bogle v. Crow-Brighton Company*, 96 F.R.D. 1 (W.D.Okla.1981); *Stoner v. Ford*, 390 F.Supp. 327 (N.D.Okla. 1974); *Forbush v. Wallace*, 341 F.Supp. 217 (M.D.Ala.1971), affirmed, 405 U.S. 970, 92 S.Ct. 1197, 31 L.Ed.2d 246 (1972).

■ One of the factors which other courts have recognized and which weighs heavily in this case is the geographic dispersion of the class members. In *Allen v. Isaac*, 99 F.R.D. 45 (N.D.Ill.1983), a class of 17 was certified because they were scattered throughout the United States and worked out of seven different states. The impracticability of voluntary joinder of 115 plaintiffs living in 21 different states by the traditional means, i.e., separate pleadings, with its concomitant problems of discovery, strategy, and docketing, is self-evident. The trial court did not abuse its discretion in finding that the class is so numerous that joinder is impracticable.

## II

### Subsection 2.

■ To satisfy the second prerequisite, the case must involve questions of law or fact common to the class which predominate over any questions affecting only individual members. As part of its attack upon the finding that this prerequisite is satisfied in this case, the bank argues that

---

lesser of One Hundred Thousand Dollars ($100,-000.00) or one percent (1%) of the net worth of the defendant. In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance with the law by the defendant, the resources of the defendant, the number of persons adversely affected and the extent to which the defendant's failure of compliance with the law was intentional. Nothing in this act shall limit any recovery allowed pursuant to the provisions of Section 9 of Title 23 of the Oklahoma Statutes.

"C. The order permitting a class action shall describe the class. The court shall limit the class to those members who request inclusion in the class within a specified time after notice."

**4.** "While there are exceptions, numbers under twenty-one have generally been held to be too few. Numbers between twenty-one and forty have evoked mixed responses, and again, while there are exceptions, numbers in excess of forty, particularly those exceeding 100 ... have sustained the (numerosity) requirement...." 3B Moore, *Federal Practice*, ¶ 23.05(1), at pages 23–151 through 23–155.

the court erred in certifying both what it calls the "common fund" claim, and the "damage" claim. While the bank almost concedes that as to the funds currently held, and the interest thereon if the bank is required to pay such, common questions predominate, it contends that the "damage" claim, or the claim for losses sustained as a result of the bank's alleged breach of trust and its fiduciary duties, involves essential individual questions unique to each bondholder. While we have no quarrel with the bank's general suggestion that separately plead bases for relief and requests for relief may be evaluated separately, certifying some for class action and denying that classification as to others as may be appropriate, that principle does not answer the question here. The trial court did not base its conclusion that common questions predominated solely on the existence of the common fund, and we must still examine the "breach of trust" claim to determine whether the trial court's conclusion that the second prerequisite was met is supportable in the record.

■ The bank's contention in this regard is based upon its belief in the existence of two types of individual questions which prevent class action certification. The first is its belief that liability to each individual bondholder must be premised upon some sort of reliance upon the trustee by bondholder in purchasing. In *Mattoon v. City of Norman,* supra, we determined that common issues did not predominate where individual questions of "liability" were inextricably intertwined with the common questions.

There do not appear to be substantial individual questions as to liability in this instance. As we presently interpret the plaintiff's petition they do not seek recovery from the bank on the theory that the bank mislead them or participated in any fraud or deceit upon them under which they would have to prove "reliance". Liability, if it exists at all, is premised upon actions taken by the bank or not taken by the bank in violation of its duties under the trust indenture and common law. Without

rendering any opinion upon the ultimate merits of their claim, and without any authority for such proposition being cited by the bank, we cannot conclude that proof of individual bondholder "reliance" would be required.

The two "claims" by the bondholders appear to be two "common funds." The first is more or less liquidated, while the second consists of the damage to the trust estate allegedly caused by the failure of the trustee to live up to its obligations. The issues of the trustee's liability appear to be common as to all bondholders. The trial court's finding that they predominate over any individual questions is supported by the record.

The second type of individual question which the bank argues exists is the statute of limitations defense, and in the same vein, laches and estoppel. The bank contends that whether the statute of limitations has run against individual bondholders will depend upon when that bondholder first knew or had reason to know of alleged deficiencies in the bank's performance of its duties. It points to evidence that at least one of the named plaintiffs made a note at an undetermined time of the bank's name and number in connection with his investigation of the default. It alleges that if that plaintiff knew of the bank's role sufficiently before the institution of this action, his recovery may be barred.

According to allegations of the bondholders, the bank has never communicated with the bondholders, and to the extent that its liability may be premised upon an alleged duty of the bank to communicate with the bondholders concerning the defaults, and in the fulfillment of its fiduciary duties to inform the bondholders of the violations of the trust indenture by the promoters and issuing authority, it is possible that the statute of limitations has not yet begun to run. We need not, and do not, make that determination in this context. It is sufficient to note the tenuous nature of the individual defense alleged to exist.

The claim that there exists sufficient individual statute of limitations defenses to prevent class action certification has not found much favor with the courts dealing with these questions. See *Williams v. Sinclair*, 529 F.2d 1383 (9th Cir.1975); *Umbriac v. American Snacks, Inc.*, 388 F.Supp. 265 (E.D.Pa.1975); *Lamb v. United Security Life Co.*, 59 F.R.D. 25 (S.D. Iowa 1972). On the record here it does not appear likely that there will be numerous bondholders who should have discovered the bank's alleged defalcations sufficiently long ago to allow the running of the statute of limitations. As to those whose actions give rise to questions concerning this issue, the trial court may surely treat those problems in connection with individualized damage claims, or at least eliminate those affected individuals as members of the class.

Where the statutory prerequisites are met, we are committed to the concept of early certification of class actions, with the trial court retaining the freedom to modify its certification order during pendency of the case if later developments deem that approach advisable. *Perry v. Meek*, supra. The trial court's determination that common issues predominate is supported by the record, and we find, at least as of this time, that the case satisfies the second prerequisite.

## III

### Subsection 3.

■ The third prerequisite is that the claims or defenses of the representative parties must be "typical" of the claims or defenses of the class. While it is not clear from other authorities precisely how this prerequisite differs from the "common issue" requirement discussed above,[5] the bank apparently believes that the named plaintiffs' claims and defenses are not typical because of its perceived potential for estoppel against those parties by reason of certain findings in the Alabama litigation.

It contends that liability in that case was premised upon there being no trustee, which it is suggested is inherently in conflict with the present allegations that the trustee did not do its job.

We do not so interpret that ruling. According to the certified copies of the Alabama proceedings which were filed in this case, the federal judge did not consider the common law fraud, deceit, and misrepresentation claims in that class action. Its finding of liability on the part of the underwriter was based upon violations of federal securities law and the underwriter's failure to perform an adequate "due diligence" investigation. The court determined that such an investigation would have properly revealed, for disclosure to potential bond purchasers, that no procedure had been set up to insure that the proceeds for the bonds would be turned over to the trustee or for the trustee to obtain the necessary security interests in the properties which were to secure the bonds. Liability was not premised upon there not being a trustee, but on the fact that bondholders were not told that the trustee would not function as such in reality.[6] There is no doubt that there was a trustee, or that the trust indenture gave that trustee the wherewithal to perform its job. The allegations are that the trust indenture was not followed by the trustee or the promoters of the bonds.

The named plaintiffs have alleged that their claims and defenses are typical, and the evidentiary materials and authorities in this record support that conclusion. However, should the trial court later determine that one or more of the representative parties stands in a position in conflict with the class members, it has the power to modify its order as may be necessary. For the present, its certification is supported by the record as to this prerequisite.

## IV

### Subsection 4.

The bank does not challenge the finding with regard to the fourth prerequisite, that

---

**5.** See 3B Moore, *Federal Practice,* ¶ 23.06–2

**6.** *Shores v. M.E. Ratliff Investment Company,* Fed.Sec.L.Rep. ¶ 98,425 (1981–82) Transfer Binder (N.D.Ala.1982).

the representative parties will fairly and adequately protect the interests of the class. However, we note that these same parties and counsel have pursued to a partially successful conclusion one class action involving these same bonds, and there is no reason to believe that they will not continue to adequately represent the interests of this class.

## V

### Subsection 5.

■ The last prerequisite is that the class action must be superior to other available methods for the fair, efficient adjudication of the controversy. Basing its argument upon its interpretation of the class action statutes as akin to new joinder provisions, the bank argues that the only difference between this class action and the joinder provisions is that notice will be sent to the class members under 12 O.S.1981 § 15. This aspect alone, it is argued, is insufficient to make the class action treatment superior to joinder. Having already concluded that the trial court properly determined that joinder was impracticable under Subsection 1, we need not examine that aspect again under this fifth prerequisite.

The focus of this fifth requirement, which is virtually identical to the provisions of Rule 23(b)(3) of the Federal Rules of Civil Procedure, is upon the benefits which the class action procedure has over other alternative methods of adjudicating the dispute, balanced against the management problems which may arise from class treatment. See 3B, Moore, *Federal Practice,* ¶ 23.45(3). Analyzing the record in this case in light of the considerations suggested by the legislature in 12 O.S.1981 § 14,[7] we must conclude that the trial court was justified in its determination that class treatment was superior to other available methods of adjudication.

As noted previously, the only other non-voluntary alternative is permissive joinder of all the class members, with its attendant problems.[8] Contrary to the protestations of the bank, the requirement of notice to the class members, extending them the opportunity to participate in this litigation will go far to eliminate much needless litigation. If all or a substantial number of class members brought separate lawsuits, given the bank's location and principal place of business in Oklahoma, it is likely that in order to assure jurisdiction, those suits would be brought here. Those class members, most of whom have already been advised that there is litigation pending concerning these bonds against other defendants, would be offered the opportunity to have their rights determined in this single action.

The bank suggests that the class action certification places it in a precarious position. It says that it will be exposed to the risk of liability to all members of the class,

---

**7.** Title 12 O.S.1981 § 14 provides:

"As soon as practicable after the time to serve a responsive pleading has expired for all persons named as defendants in an action brought as a class action, the party who seeks to establish the class shall move for an order to determine whether it is to be certified and so maintained. An order under this section may be conditional, and may be altered or amended before the decision on the merits on the court's own motion or on motion of the parties. The action may be maintained as a class action only if the court finds that the prerequisites under Section 1 of this act have been satisfied. The court shall consider, but shall not be limited to, the following matters in determining whether the action may proceed as a class action:

"1. The interest of members of the class in individually controlling the prosecution or defense of separate actions;

"2. The impracticability or inefficiency of prosecuting or defending separate actions;

"3. The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

"4. The desirability or undesirability of concentrating the litigation of the claim in the particular forum; and

"5. The difficulties which might be encountered in the management of a class action."

**8.** It is possible that the present parties might agree to be bound by a "test case" in which the common issues are litigated, but neither party has shown such an inclination. It appears that the bank would have little to gain from such a case, inasmuch as absent class members would not be bound by such an agreement.

while class members may be able to disclaim the effect of any adverse judgment if it is later determined that an Oklahoma court lacked jurisdiction over those members. This argument overlooks the fact that only those members of the defined class who elect to participate in this case and become parties are "members of the class" for purposes of the judgment. Any bondholder who wishes to take advantage of the potential recovery must also run the risk of loss in this case.[9]

The record amply supports the trial court's decision that class action is the superior method of adjudicating this controversy as this litigation now stands.

## CONCLUSION

Nothing which we have said here should be interpreted to prohibit the trial court from modifying its order of certification as the later development of this case may dictate. Early certification offers the benefit of allowing orderly discovery to proceed, while at the same time reserving the power of the court to adjust its management of the case as it develops. On the record before us, the trial court's determination that class action certification was appropriate was not an abuse of discretion and must be affirmed.

AFFIRMED.

All the Justices concur.

---

9. We do not suggest that a non-participating bondholder would not be able to use "offensive collateral estoppel" as to issues determined in his favor, and we do not address that here. However, *if that is a risk* to the bank from this litigation, it is present whether this case proceeds as a class action or otherwise. It would appear to be advantageous in one sense for the bank to be able to bind as many bondholders as possible in this action.