Fletcher HANDLEY, Appellee,

v.

SANTA FE MINERALS, INC., a Texas Corporation, Appellant.

No. 78816.

Court of Appeals of Oklahoma, Division No. 1.

Nov. 10, 1992.

As Corrected April 12, 1993.

Gary W. Davis, Mark D. Christiansen, Peggy L. Clay, Oklahoma City, for appellant.

Fletcher D. Handley, Jr., El Reno, for appellee.

## MEMORANDUM OPINION

JONES, Judge:

Appellant, Santa Fe Minerals, Inc. (Santa Fe), seeks review of the trial court's Order Of Class Certification finding that a class existed for certain Oklahoma royalty interest owners as lessors to Santa Fe. Appellant asserts the present action does not meet the statutory requirements for certification as a class action lawsuit under 12 O.S.1991 § 2023.

Appellee, Fletcher Handley (Handley), filed his Petition in District Court seeking an accounting of four Santa Fe wells located in Section 7, Township 12 North, Range 7 West I.M., Canadian County, Oklahoma. Handley later filed an Amended Petition alleging the withholding of post-production costs by Santa Fe, and asserting a class action on behalf of himself and all similarly situated persons in Oklahoma owning mineral interests in producing wells, who executed oil and gas leases since January 25, 1985, to Santa Fe containing the following clause:

> In consideration of the premises the lessee covenants and agrees ... to pay lessor for gas of whatsoever nature or kind (with all of its constituents) produced and sold or used off the leased premises or used in the manufacture of products therefrom, _____ of the gross proceeds received for the gas sold, used off the premises, or in the manufacture of products therefrom, but in no event more than _____ of the actual amount received by the lessee, said payments to be made monthly.

Trial briefs were submitted and oral arguments presented to the trial court, although no transcripts were taken. On December 3, 1991, the trial court issued its order finding that pursuant to 12 O.S. § 2023, a class existed consisting of royalty owners in Oklahoma, which had been leased by Santa Fe from January 25, 1985, to the present and whose lease contained the aforementioned clause. The Court also found Handley's claims were typical of the claims of the newly created class and ordered him to proceed accordingly as the representative party. Santa Fe has appealed, and the sole issue for our determination is whether or not the evidence below supports the decision of the trial court. We hold that it does.

The Oklahoma Supreme Court has addressed this issue under our current statutes in three recent decisions. Although those cases are distinguishable factually from the present appeal, they provide us with sufficient guidelines to resolve the present appeal. *Perry v. Meek*, 618 P.2d 934 (Okla.1980), dealt with a lawsuit of about 800 depositors as owners of trust funds and creditors of a bankrupt trust company. *Mattoon v. City of Norman*, 633 P.2d 735 (Okla.1981), was an appeal from a denial of certification of landowners who challenged a municipal ordinance, and *Shores v. First City Bank Corp.*, 689 P.2d 299 (Okla.1984), upheld the trial court's certification of holders of defaulted municipal bonds. We therefore apply the law as espoused from those cases, and as applicable to the present situation.

In order for Appellant to succeed in this appeal, it must be demonstrated that the trial court abused its discretion in certifying this class action. *Shores*, 689 P.2d at 301. However, in the present case, the record supports the conclusion that the statutory prerequisites have been met; certification by the trial court was correct; and, the trial court did not abuse its discretion.

■ In Oklahoma, a class action can be initiated and maintained if: (1) the size of the class is so numerous that joinder of all members is impracticable; (2) there are common questions of law or fact to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and, (4) the questions of law or fact, common to the members of the class, predominate over any questions affecting only individual

members. 12 O.S.1991 § 2023. Since the commonality, typicality and predomination prerequisites for establishing a class action in the instant case pertain only to the royalty clause provisions of the respective leases, we limit our review to the arguments pertaining thereto.

█ We begin our analysis by examining the trial court's Order dated December 3, 1991, and filed December 10, 1991. The Order specifically includes "owners of royalty interests in Oklahoma, which interests have been leased or assigned to the defendant, Santa Fe Minerals, Inc., ... at any time from January 25, 1985, to the present whose lease contain the following clause ... who have not previously settled or compromised a claim with the defendant ...". This order is very narrow in scope, providing parameters as to time, parties, and geography. It is within these narrow confines that we review the Order on appeal and those issues *as raised by that Order.*

The central contention on appeal of Santa Fe focuses on the leases of the parties and the different forms that those leases take, when altered by the respective parties. The essence of Santa Fe's argument is that each lease constitutes a separate and dissimilar contract, different enough in substance to defeat the commonality, typicality and predominance provisions of 12 O.S. § 2023. Santa Fe briefs this subject extensively on appeal, and accordingly we will address the content of those leases in detail.

The thrust of Handley's argument, however, and the wording of the trial court's Order, is that the leases in Section 7 contain enough language common to each lease to create a common class of leasehold interests. Handley contends the trial court's Order is correct for the reason that although the leases are each a separate and distinct contract between the respective lessees and lessors, as argued by Santa Fe, the resulting questions of law pertain *only* to the royalty clause that is common to the individual leases.

Santa Fe argues there is no such thing as a standard oil and gas lease, citing extensively Vol. 2 Kuntz, *Oil and Gas Law*

§ 18.1, pages 1 through 3 (1989). We agree with this general statement, but this reasoning ignores the scope of the class narrowly formulated by the trial court. Reviewing the leases at issue in the present case, the lease forms contain several blank spaces which, when filled in, effectively alter the terms and conditions of the individual leasehold estate to *create* different contracts between lessor and lessee. Theses blank spaces (referred to by the parties as the "special typed provisions" section of the lease when filled in) are generally used for the revision of the percentage of royalty payment to be paid to the lessee, but have no substantive effect on the issues of the present case. An examination of the leases in question show a wide variation of contract alterations that effect both the content and substance of the respective leases. Those leases submitted by Handley provide some different examples of the variety of subject matter contained in the "fill in the blank" paragraphs, besides the alteration of royalty percentages. By filling in the different blanks, the individual lessors in Section 7 have altered the contract provisions of the leases to include additional subject matter not contained in the printed lease form, such as: outside letter agreements restricting the terms of the lease; no drilling claims; restrictions on the use of the surface for storage or pipelines; the inclusion of contiguous or appurtenant lands; and, a clarification of the exact mineral interest subject to the lease. Some leases contain no alterations at all, and the spaces have been left blank. These alterations, however, *do not effect the royalty clause of the leases. They remain unchanged.* This variation of contract terms alone is insufficient to defeat the typicality section of the statutes. The consistency of the royalty clauses in the leases submitted below justify the trial court's finding that the claims of all the parties are typical, and that no conflict will arise between the parties. This decision is supported by the base leases contained in the record, and we find the case does satisfy the typicality requirement of the statute.

Santa Fe argues the whole of a contract is to be taken together so as to give effect to every part, each clause helping to interpret the others. 15 O.S.1991 § 157. This axiom has been rigidly applied by our Courts to the oil and gas industry regarding the interpretation of oil and gas leases or royalty deeds. The intention of the parties must be deduced from the entire agreement, and every provision must be construed so as to be consistent with each other, and that construction adopted, if possible, gives effect to every part of the contract. *Iskian v. Consolidated Gas Utilities Corp.*, 251 P.2d 1073, 1076 (Okla.1952). Where a contract has several stipulations, the intention of the contracting parties is not expressed by any single clause or stipulation, but by every part and provision in it, which must all be considered together, and so construed as to be consistent with every other part. *Mid–Continent Petroleum Corp. v. Blackwell Oil & Gas Co.*, 15 P.2d 1028, 1031 (Okla.1932). The trial court, in the present case, was correct to categorize all the lessors that have a common royalty clause in their leases held by Santa Fe, without addressing the other provisions of the leases. The order of the trial court is very narrow in its explanation of how it arrived at its decision, carefully restating the guidelines of 12 O.S. § 2023. This is not far reaching and cumbersome as Santa Fe suggests.

We review the facts as presented to us on appeal, and apply the appropriate law which has been decided by the Oklahoma Supreme Court. As the Court observed in *Perry v. Meek*, supra:

... any determination of class status should be predicated on more information than the complaint contains ... *the class determination is one which should be made by the court in a practical and realistic manner* based upon an understanding of what actually is involved in the litigation, *and no mechanical formula exists which can be applied to all cases to make that finding.* (Citation of Federal authority omitted, emphasis added.)

618 P.2d at 941.

Applying this rationale to the present case, each mineral interest owner has a separate and distinct lease with Santa Fe. The legal descriptions vary and the individual contract provisions of each lease have been altered to suit individual needs. The present drilling operations on the individual tracts of land are not subject to due process questions raised by interference and impairment from a municipal ordinance as in *Mattoon*. By its nature, the granting clause of an oil and gas lease conveys to one party a limited use of the property interest to the detriment of the other, and any damages resulting therefrom are individual in nature, but this does not necessarily preclude those damages from being determined by a class action. In deference to Santa Fe's argument, and by way of example, we examine closely the two leases representing the extreme and most divergent interests: the Fletcher Handley lease covering an 80 acre tract in Section 7 that specifies a no drilling clause; and, the City of El Reno lease covering 123.68 acres in the same section with no restrictions to surface drilling. *This difference does not effect the royalty provisions of the lease, even though it does create two entirely different contracts.* We see no potentially conflicting interests of those who are putative parties to the lease agreements in compelling or resisting their performances, and it is possible to say that any two of them are of the same class. Handley shares a common question of law with the class and his claims and defenses are typical of the other leasehold estates who are leased to Santa Fe throughout the State of Oklahoma. He is therefore qualified to be representative of the other lessors. We believe the Order of the trial court is not far reaching, and is narrow enough in scope to constitute a valid class.

Finally, we address the merits of Handley's claim, as both parties have so done on appeal. Santa Fe briefs several possible defenses that can be raised at trial, including different types of expenses related to post production, such as, gathering fees, transportation costs, compression costs, dehydration costs and other marketing expenses. Some post production costs

are incurred at the wellhead, while other costs are incurred downstream. Whether these post production expenses are reasonable is not the issue to be resolved in this action, rather, whether any deductions for this type of expense are authorized under the clause in question. The fact that individual lessors may have different defenses to any counterclaims by Santa Fe does not prevent Handley from representing the class.

In summary, the leases in the record containing the aforementioned royalty clause do not support Santa Fe's contention that the Order of Class Certification by the trial court was incorrect. The class determination was made by the trial court in a narrow context, and in a practical and realistic manner based upon an understanding of what was actually involved in the litigation. *Perry*, supra, 618 P.2d at 941. The trial court specifically found many of the class members would not have an opportunity to be heard if the class action was not allowed. Certification under 12 O.S. § 2023 is appropriate, in this case, to those oil and gas leases which contain the common royalty clause.

**AFFIRMED.**

ADAMS, P.J., and GARRETT, J., concur.