SHELL OIL COMPANY, a Corporation, et al.

v.

CORPORATION COMMISSION of the State of Oklahoma, and the State of Oklahoma, Defendants in Error.

No. 39672.

Supreme Court of Oklahoma.

Oct. 22, 1963.

Rehearing Denied March 3, 1964.

J. T. Lamb, C. N. Wagner, Denver, Colo., Gordon Watts, G. D. Ashabranner, Oklahoma City, for plaintiff in error Shell Oil Co.

Tom Z. Wright, Harold G. Lowrey, Wright & Lowrey, Woodward, for plaintiffs in error W. R. Blanchard, Waldo M. Blanchard, Olen G. Zoldoske, George S. Lowrey, Arthur E. Sharp, Don Sharp, William Sharp, Darlene A. Fitz, Tom S. Miller, Martin D. Miller, and Alexis T. Miller.

Ferrill H. Rogers, L. D. Hoyt, John Buckingham, Oklahoma City, for defendant in error Corporation Commission.

Howard H. Harris, Tulsa, for defendant in error Ohio Oil Co.

Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, C. Harold Thweatt, Oklahoma City, for amicus curiae United Producing Co., Inc.

George H. Bowen, William C. Phelps, John O. Dean, O. L. Peck, Jr., Tulsa, for amicus curiae Sun Oil Co.

Angus A. Davidson, Ted D. Foster, Jr., Tulsa, for amicus curiae Sinclair Oil & Gas Co.

JACKSON, Justice.

This is an appeal by Waldo Blanchard, a lessor, and others, from an order of the Corporation Commission, and involves the rights of royalty owners as to the one-eighth royalty portion of gas produced from the Morrow Sand in the Laverne Field situated in Harper, Ellis and Beaver Counties, Oklahoma. A brief statement of the facts in chronological order will be helpful.

On October 20, 1955, the Corporation Commission entered spacing order No. 30935 establishing 640 acre drilling and spacing units. The order, among other things provided:

"That all royalty interests within any spacing unit shall be communitized and each royalty owner within any unit shall participate in the royalty from the well drilled thereon in the relation that the acreage owned by him bears to the total acreage in the unit."

Waldo Blanchard owns 320 acres in Section 23, Township 28 North, Range 25 West, in Harper County, in the Laverne Field. His acreage is under lease to Sun Oil Company. The other 320 acres in the section is owned by W. R. Blanchard, O. S. Black, and the State of Oklahoma (Commissioners of the Land Office), and is under lease to Shell Oil Company.

The two lessees, Shell and Sun, drilled a gas well on Section 23 and entered into an operating agreement whereby Shell drilled the gas well and would operate the unit. So far as the record shows Sun and Shell have each paid their proportionate shares of the costs of drilling and operating the well and there is no indication that Shell claims a lien for either drilling or operating costs against Sun's interest or share in the production under the provisions of 52 O.S. 1961 § 87.1(d), or by order of the Commission.

Shell entered into a gas sale contract with Northern Natural Gas Company and Sun entered into a gas sale contract with another company. However, since Sun's gas purchaser has made no pipe line connection with the well Sun has made no gas sales to its purchaser. Sun verbally agreed that Shell might take all of the production from the well and market it for the time being, and Shell began doing so in December, 1959. It was contemplated that when Sun's purchaser had made a pipe line connection, Sun would "catch up" with Shell in the volume of gas taken from the well and sold. It should also be noted that Shell's gas sale contract called for a basic price of 15¢ per MCF, and Sun's contract price was 17¢ per MCF. Both contracts have been approved by the Federal Power Commission since all gas from this well would move in interstate commerce.

Shell has sold all of the gas produced from the well at 15¢ per MCF; has paid royalty to its lessors; and holds in its possession the money it received from the sale of gas apportionable to Sun's lessor. Sun has made no royalty payments to its lessor, Waldo Blanchard.

In March, 1960, Waldo Blanchard made demand on Sun for payment of royalty and "received no satisfaction." Being unable to collect royalty, Blanchard in July 1960, filed an application with the Corporation Commission, asking for an interpretation and clarification of the communitization paragraph of spacing order No. 30935, as above quoted.

Before the application came on for hearing many major producers, independent producers, and royalty owners intervened in view of the fact that the above quoted paragraph from spacing order No. 30935

has been included in practically all drilling and spacing orders of the Commission which have been entered pursuant to 52 O.S.1961 § 87.1.

After extensive hearings at which evidence and contentions were presented by parties representing many different segments of the oil and gas industry, the Commission entered Order No. 44849. By this order the Commission adopted what is called a "tract allocation" type of royalty interest communization. The pertinent part of the order is contained in paragraph 14 thereof, and is quoted as follows:

> "14. That * * * (the paragraph above quoted from spacing order No. 30935) * * * was intended and is to be interpreted and applied as creating a 'tract allocation' type of royalty interest communitization. In entering said orders the Commission contemplated and intended that *current* production from the well or wells on each producing drilling and spacing unit would be divided volumetrically, that *the respective volumes of such production would be currently allocated to the separately owned tracts or interests on an acreage basis,* and *that the production so allocated would be treated for all purposes, including payment of royalties, as if it were actually produced from such separately owned tract or interest by a well drilled thereon.* It was not the intent of the Commission nor the purpose of the provision of the orders referred to above to modify or affect in any way the respective contract rights of any interested parties other than to substitute an allocated share of the unit's production for actual production from a separately owned tract or interest. The Commission does not consider that it has such authority for the reason that the statutory and constitutional limitations upon its powers prohibit intrusion upon private contract rights except in so far as is necessary to the accomplishment of a legitimate conservation objective. In this case the conservation objective can be accomplished without impairment of private contracts in any manner other than the substitution of an allocated share of a given well's production in lieu of actual production from a separately owned tract or interest. * * *" (Emphasis supplied.)

It is contended by Shell that the clarification order is directly contrary to the "royalty provisions" of 52 O.S.1961 § 87.1(d).

Sec. 87.1(d) provides in pertinent part as follows: (Identifying numbers added.)

> 1. "The portion of the production allocated to the owner of each tract or interests included in a well spacing unit formed by a pooling order shall, when produced, be considered as if produced by such owner from the separately owned tract or interest by a well drilled thereon. * * *

> 2. "The Commission is specifically authorized to provide that the owner or owners drilling, or paying for the drilling, or for the operation of a well for the benefit of all shall be entitled to production from such well which would be received by the owner, or owners, for whose benefit the well was drilled or operated, after payment of royalty, until the owner or owners drilling or operating the well have been paid the amount due under the terms of the pooling order or order settling such dispute. * * *

> 3. "For the purpose of this Act the owner, or owners, of oil and gas rights in and under an unleased tract of land shall be regarded as a lessee to the extent of a seven-eighths (7/8) interest in and to said rights and a lessor to the extent of the remaining one-eighth (1/8) interest therein. * * *

> 4. "In the event a producing well, or wells, are completed upon a unit where there are, or may thereafter be, two (2) or more separately owned tracts, any royalty owner or group of royalty owners holding the royalty in-

terest under a separately owned tract included in such spacing unit shall share in the one-eighth (⅛) of all production from the well or wells drilled within the unit, or in the gas well rental provided for in the lease covering such separately owned tract or interest in lieu of the customary fixed royalty, in the proportion that the acreage of their separately owned tract or interest bears to the entire acreage of the unit; * * *.

5. " * * * provided, where a lease covering any such separately owned tract or interest included within a spacing unit stipulates a royalty in excess of one-eighth (⅛) of the production, or said lease shall be subject to an overriding royalty, to production payment or other obligation, then the lessee of said lease out of his share of the working interests from the well drilled on said unit, shall sustain and pay said excess royalty, overriding royalty, or production payment, and therefrom meet any other obligation due in respect to the separately owned tract or interest held by him."

Under paragraph 3, above, we think a distinction is made between the owners of the ⅞ths working interests and the owners of the royalty interests. Under paragraph 1, above, the production from the ⅞ths working interest will be allocated to the lessees and be considered as if produced by such lessee from his separately owned tract by a well drilled thereon. It seems clear that as to the ⅞ths working interest it is to be allocated upon a "tract allocation" basis.

Under paragraph 4, above, it is specifically provided that *any* royalty owner shall share in the ⅛th of *all* production from the well in the proportion that his acreage bears to the entire acreage of the unit. It is noteworthy that the royalty so allocated to a lessor is not characterized or considered as if produced on such lessor's acreage by a well drilled thereon. The ⅛th royalty, whether it be in oil, gas, gas well rental, or ⅛th of the revenue from the sale of the gas, is to be shared by each royalty owner in the ratio that his acreage bears to the unitized area. While it is true that under their lease agreements with their lessees, Waldo Blanchard, O. S. Black and W. R. Blanchard have authorized their lessees, respectively, to dispose of the gas produced from their *separate tracts,* the statute supersedes their lease contracts and directs that each lessor will share in ⅛th of *all production from the unitized area.*

Paragraph 5, supra, by contrast provides a different responsibility for the payment of contract royalties in excess of the ⅛th, for overriding royalties, and for production payments. These responsibilities are placed upon the lessee owning a lease burdened with such obligations to pay the same out of the production from his working interest in the well. This distinction infers a legislative intent that the lessee, or lessees, producing from the well will each be responsible to all royalty owners in the unit for the delivery of ⅛th of the production which said lessee takes from the well, or ⅛th of the proceeds from the sale of gas at the mouth of the well, as their lease contracts may direct, and in the ratio that the acreages of royalty owners bear to the total acreage in the unit.

The problems here presented are admittedly not of easy solution. We are indebted to the parties, to the intervenors, and to the Corporation Commission, for their able and sincere efforts to assist the court in a proper solution of these problems. Numerous theories and contentions are made and supported by authority from other jurisdictions and text writers. However, after a careful consideration of the briefs and able arguments we have reached the view that the solution is found in Sec. 87.1 (d), supra, as heretofore quoted and construed.

The result will be from our construction that each lessor, in the ratio that his acreage bears to the unit, will receive royalty in gas or in the proceeds from the sale of the gas, as his lease may require;

and where gas is sold at the mouth of the well as has been done by Shell at the rate of 15¢ per MCF, Shell should pay each lessor in the unit at the rate of 15¢ per MCF; when, and if, Sun sells gas at the rate of 17¢ per MCF it should pay each lessor in the unit at the rate of 17¢ per MCF; and when Sun and Shell are both taking simultaneously from the well each should account to the royalty owners at the rate which each lessee receives for the sale of gas disposed of by it.

From what we have concluded it follows that Order Number 44849 of the Corporation Commission must be, and is, vacated in so far as it directs that the payment of royalties shall be currently allocated as if it were actually produced from the separately owned tracts within the unit.

HALLEY, V. C. J., and WELCH, DAVISON, JOHNSON, WILLIAMS, IRWIN and BERRY, JJ., concur.