Sharon Kay PIERCE, Sole Trustee of the Earl Ray West Family Trust, Appellee,

v.

TEXAS PACIFIC OIL COMPANY, INC., a corporation, Appellant.

No. 75–1759.

United States Court of Appeals, Tenth Circuit.

Argued Aug. 23, 1976.
Decided Dec. 30, 1976.

F. Lovell McMillin, Fischl, Culp, McMillin, Kern & Cawley, Ardmore, Okl. (Thomas W. Lynch, Dallas, Tex., of counsel, with him on the brief), for appellant.

Charles E. Malson, Oklahoma City, Okl., for appellee.

Before HILL, SETH and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This is a diversity suit brought by or on behalf of the successor to the lessors of an oil and gas lease against the lessee. The question concerns the payment of royalty on gas under the lease provisions after the land had been included with other lands in a spacing unit established by the Oklahoma Corporation Commission.

Both parties filed motions for summary judgment. The trial court granted plaintiff's motion.

Some background facts should be recited. Thus, the record shows that Ray West and Donna F. West, husband and wife, as lessors, executed an oil and gas lease to Texas Pacific Oil Company, Inc., covering the SW/4 of Section 4, Township 10 North, Range 9 West, Caddo County, Oklahoma. The lease was a form apparently commonly used in Oklahoma and somewhat imprecisely identified as: "Form 88 Prod. (pooling) (Okla.) (640 Shut In) (Revised 1963)." In any event, the pertinent language of the lease for our purposes is found in clause 2, which reads in part: "To pay lessor . . one-eighth (⅛) at the market price at the well for gas sold." Subsequent to the execution of the oil and gas lease, the Wests assigned their interest to plaintiff. Thereafter, the Oklahoma Corporation Commission ordered 640-acre drilling and spacing units for the Morrow and Springer Sands as a common source of supply underlying all of Section 4, Township 10 North, Range 9 West, Caddo County, Oklahoma. The Oklahoma Corporation Commission's order stated, in part:

"That all royalty interest within any spacing unit shall be communitized and each royalty owner within any unit shall participate in the royalty from the well drilled thereon in relation that the acreage owned by him bears to the total acreage in the unit."

The defendant-lessee joined with other working interest owners in the section in drilling a well on Section 4, known as the Lange Well.

Gas was found in the Lange Well, and was produced and marketed. Defendant sold its Lange Well gas under a gas purchase contract to Oklahoma Natural Gas Company. The other working interest owners in the Lange Well sold their gas either to the same company or to Oklahoma Gas and Electric Company. Under the contracts, Oklahoma Natural Gas Company received 25.77458% of the Lange Well gas and Oklahoma Gas and Electric Company received 74.22542%. The problem arises because the prices for gas received in sale by defendant to Oklahoma Natural Gas were higher than the prices for gas sold by others to Oklahoma Gas and Electric. Thus appellee received her percentage of sales to Oklahoma Natural Gas at the higher price, and received her percentage of sales to Oklahoma Gas and Electric at the lower price. Appellee was, of course, paid her royalty

out of all production from the Lange Well unit in the proportion that her acreage bore to the acreage in the unit. Thus she received .015625% of sales to Oklahoma Gas and Electric and the same percentage of sales to Oklahoma Natural Gas.

There is no issue as to the shares, and plaintiff's cause of action is based on the theory that defendant should pay her *also*, or in addition, the difference between the low gas price and the higher gas price, and this should be paid out of defendant's working interest. The lease provides for the usual one-eighth of the "market price at the well," as quoted above. But the contention of appellee is based upon this "market price" provision, on several Oklahoma statutory provisions, and on a construction of *Shell Oil Co. v. Corporation Comm'n*, 389 P.2d 951 (Okl.), a case referred to as the "Blanchard Case."

The relevant statute in Oklahoma regarding communitization is 52 O.S.A., 1969, § 87.1(d), which states in part:

"In the event a producing well, or wells, are completed upon a unit where there are, or may thereafter be, two (2) or more separately owned tracts, any royalty owner or group of royalty owners holding the royalty interest under a separately owned tract included in such spacing unit shall share in the one-eighth (⅛) of all production from the well or wells drilled within the unit, or in the gas well rental provided for in the lease covering such separately owned tract or interest in lieu of the customary fixed royalty, in the proportion that the acreage of their separately owned tract or interest bears to the entire acreage of the unit; . . . ."

In construing this statute in the Blanchard Case, the Oklahoma court held that any royalty owner shall share in the one-eighth of all production from the well in the proportion that his acreage bears to the entire acreage in the unit.

The plaintiff has been paid royalty in accordance with the Blanchard holding, and the statute quoted above. However, plaintiff argues that the "market price at the well" is the higher price, applied to all gas, not just defendant's sales, and the shortage is an "other obligation" under another portion of the same section of the statute quoted above, but referring to non-pooled obligations. This latter portion reads in part:

". . . [P]rovided, where a lease covering any such separately owned tract or interest included within a spacing unit stipulates a royalty in excess of one-eighth (⅛) of the production, or said lease shall be subject to an overriding royalty, to production payment *or other obligation*, then the lessee of said lease out of his share of the working interests from the well drilled on said unit, shall sustain and pay said excess royalty, overriding royalty, or production payment, and therefrom meet any other obligation due in respect to the separately owned tract or interest held by him." (Emphasis added).

Thus plaintiff urged, successfully in the trial court, that the price difference was such "other obligation" as production payments, etc., since a pure "market price" lease was executed.

The plaintiff before the trial court took the position that the lessor, who was a petroleum engineer, intended to have a "market price" lease as distinct from a "gross proceeds" lease. This issue is really not a basic one because if this is assumed to be a market price lease, under Oklahoma statutes and decisions, the lessor is receiving royalty based on the "market price." The contract price is the market price. *See Apache Gas Products Corp. v. Oklahoma Tax Comm'n*, 509 P.2d 109 (Okl.). The contention that the lessor is entitled to receive added payments as "other obligations" cannot succeed in the face of the clear provisions of the statute, and the holding in the *Blanchard* case. The royalty must be determined on the proportional basis applied to the gas as sold from the unit under the "split-stream" arrangement. The plaintiff in the trial court conceded that the price upon which the payments were computed was the "market price"—the contract prices. Plaintiff was paid on the basis of the total volume of gas sold from the unit,

**522**

and on the various prices received by all the working interest owners. Royalty payments to plaintiff on sales of gas made by defendant were based on the price received by defendant. The other lessees in the unit caused royalty payments to be made to plaintiff based on volumes they sold and prices they received, and defendant had no control over these sales.

The conclusion which must be reached is really nothing more than the application of the *Blanchard* decision to a market price lease. There can be no basis for an argument that some different result can be reached by attempting to combine in some way the statutory "other obligations" and ordinary royalty provisions adjusted by law to the unit situation. The statutory "other obligations" are clearly stated, and are limited to those mentioned as others under *ejusdem generis.* The mention of "royalty" is limited to leases where it may exceed one-eighth. Thus the statute is not applicable to escape the proportional rule. *Blanchard* applies and the market price, as mentioned, is in accordance with *Apache Gas Products Corp. v. Oklahoma Tax Comm'n,* 509 P.2d 109 (Okl.).

The position urged by the plaintiff is really only a variation of a market price argument which is foreclosed by the Oklahoma decisions, and by statute.

The issue is thus controlled by the cited Oklahoma case, and by the Oklahoma statutes. Thus the judgment of the trial court must be set aside, and it is hereby directed that a judgment for the defendant be entered on its motion for summary judgment.