William H. MATTOON, for himself and all other persons of the class who are similarly situated, Appellant,

v.

The CITY OF NORMAN, Oklahoma, A Municipal Corporation, Appellee.

No. 56435.

Supreme Court of Oklahoma.

July 21, 1981.

As Corrected July 27, 1981.

Rehearing Denied Sept. 15, 1981.

736

Fielding D. Haas, Norman, for appellant.

Douglas Juergens, Norman, for appellee.

OPALA, Justice:

■ The question to be answered here is whether there was error in the trial court's refusal to certify this suit as a class action. We hold that a class-action status denial is deemed to rest on an adequate record when any one of the five requisites for class action certification under 12 O.S.Supp. 1979 § 13 appears to be absent. Measured by this test, we find the order under review free from error.

The plaintiff [Mattoon] brought this suit as a class action against the City of Norman [City] in inverse condemnation. His claim was that the municipality's adoption of a flood plain ordinance [Ordinance] operated to take, without due process of law, his property and that of approximately 500 other landowners alleged to be similarly situated [Landowners]. The Ordinance prohibits

all but certain uses upon lands situated in a declared flood hazard district.

Mattoon alleged that the lands deemed to be affected were being flooded by City's diversion of waters into certain tributaries without there being provided an adequate system of storm channels. The Ordinance was enacted to enable the landowners to purchase government-sponsored flood hazard insurance. The Ordinance's declaration that the affected lands were being reserved for drainage purposes resulted in taking of the owners' properties without just compensation.

The trial court upheld the Ordinance as a valid exercise of City's police power and found that the landowners were not entitled to compensation. This court reversed that ruling in *Mattoon I*[1], holding that the allegations were sufficient to withstand the challenge of a demurrer.[2] After remand, Mattoon moved to have the suit certified as a class action in compliance with the terms of 12 O.S.Supp. 1979 §§ 13 and 14. In pertinent part his motion states: "The questions of law and fact are common to all of the class plaintiffs, except as the alleged taking of their property might vary from class member to class member, but which variance is determinable by proper appraisal as in an eminent domain action," and "[t]he claims of all members of the class are exactly the same." Mattoon met with an adverse ruling from which this appeal was lodged. Our task of determining this appeal by applying the considerations of § 14[3]

1. *Mattoon v. City of Norman*, Okl., 617 P.2d 1347, 1351 [1980].

2. *Mattoon*, supra note 1 at 1349.

3. The terms of 12 O.S.Supp. 1980 § 14 provide: "As soon as practicable after the time to serve a responsive pleading has expired for all persons named as defendants in an action brought as a class action, the party who seeks to establish the class shall move for an order to determine whether it is to be certified and so maintained. An order under this section may be conditional, and may be altered or amended before the decision on the merits on the court's own motion or on motion of the parties. The action may be maintained as a class action only if the court finds that the prerequisites under Section 1 [§ 13] of this act have been satisfied.

The court shall consider, but shall not be limited to, the following matters in determining whether the action may proceed as a class action:
1. The interest of members of the class in individually controlling the prosecution or defense of separate actions;
2. The impracticability or inefficiency of prosecuting or defending separate actions;
3. The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
4. The desirability or undesirability of concentrating the litigation of the claim in the particular forum; and
5. The difficulties which might be encountered in the management of a class action."

and the mandatory requirements of § 13 [4] is made difficult by the absence of a transcript of proceedings or conclusions of law showing us whether Mattoon has in fact met the required burden for a certification order.[5]

The trial judge was here without the guidance of our decision in *Perry v. Meek* —our first-impression consideration of the recently-enacted class-action legislation.[6]

The mandatory certification standards of § 13 are five in number, and all five must be met to qualify a suit as a class action.[7]

The non-limiting statutory guidelines for certification of class actions are set forth in § 14.[8]

Because our legislation bears great similarity to the provisions of Rule 23 [Rule 23], Federal Rules of Civil Procedure, we may resort to federal authority to shed light on its rationale.[9] Illumination of federally-evolved concepts of our procedural law may be sought from federal court decisions.[10]

Our class action procedure, like that in the federal courts and in other states, traces its antecedents to equity's recognition of the need for a course which would redress wrongs otherwise irremediable because the individual claims were either too small in value or the claimants too widely dispersed. A modern dimension was added to this concept when it became apparent that judicial efficiency in meeting present-day litigation explosion demanded that, as far as possible, multiple suits arising from the same facts and involving like questions of law be reduced in number or eliminated.[11]

The statute, 12 O.S.1971 § 233, which forms the basis for our pre-1978 class actions,[12] restates the traditional concept in words almost identical to those expressing the old rules of federal equity.[13] Traditional notions of equity procedure allowed representatives of a class to sue on behalf of others similarly situated· and afforded a judgment that would bind all.[14]

The statutes §§ 13 and 14, are unmistakably patterned after the concepts adopted in Rule 23, Federal Rules of Civil Procedure. Our approach in assessing the cor-

---

**4.** The terms of 12 O.S.Supp. 1980 § 13(A) provide:

"One or more members of a class may sue or be sued as representative parties on behalf of all if:
    1. The class is so numerous that a joinder of all members, whether otherwise required or permitted, is impracticable;
    2. There are questions of law or fact common to the class which predominate over any questions affecting only individual members;
    3. The claims or defenses of the representative parties are typical of the claims or defenses of the class;
    4. The representative parties will fairly and adequately protect the interests of the class; and
    5. A class action is superior to other available methods for the fair and efficient adjudication of the controversy." [Subsections B. and C. omitted].

**5.** *Perry v. Meek*, Okl., 618 P.2d 934, 939 [1980]; *Price v. Lucky Stores, Inc.*, 501 F.2d 1177, 1179 [9th Cir. 1974]; *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336 [10th Cir. 1973].

**6.** In *Perry*, supra note 5, the decision came down the very same week mandate in the case at bar was issued.

**7.** *Perry*, supra note 5 at 938.

**8.** *Perry*, supra note 5 at 934–935.

**9.** *Perry*, supra note 5 at 939; *See, e. g.: Reams v. Tulsa Cable Television, Inc.*, Okl., 604 P.2d 373 [1979] comparing other federally-evolved concepts to Oklahoma civil procedure and applying federal case law.

**10.** *Perry*, supra note 5 at 940.

**11.** *Green v. Wolf Corp.*, 406 F.2d 291, 297 [2d Cir. 1968].

**12.** *E. g.: Young v. West Edmond Hunton Lime Unit*, Okl., 275 P.2d 304 [1954]; *Hyde v. Board of Equalization*, 196 Okl. 28, 162 P.2d 175 [1945].

**13.** Federal Equity Rule 38: "When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole." 226 U.S. 659, 33 S.Ct. xxix, 57 L.Ed. 1643 [1912]; *see also State v. Board of County Commissioners of Creek County*, 188 Okl. 184, 107 P.2d 542, 552 [1940] for § 233's similarity to the old federal rule.

**14.** *Smith v. Swormstedt*, 57 U.S. 288, 16 How. 288, 14 L.Ed. 942 [1853].

738

rectness of the order under review will follow the guidelines established by federal case law which applies that rule. We shall take as true all the uncontroverted allegations of the instruments in the record and the undenied statement of counsel in the briefs.[15]

Because City relies primarily on Mattoon's failure to meet the standards of subsections (2) and (3) of § 13, we shall first pass briefly to notice the presence of uncontested requirements for certification:

Subsection (1): Mattoon seeks to represent an approximate number of 500 landowners alleged to be similarly situated. This falls within the "numerosity" requirement.[16] City does not contest Mattoon's ability to meet this requirement.

Subsection (4): Mattoon alleges in his Motion that the representative parties will fairly and adequately protect the interests of the class.[17] City does not contest Mattoon's ability to meet this requirement.

Subsection (5): City has left unanswered Mattoon's allegations and authorities—together with his detailed recommendations of alternate courses of action that could be selected by the trial court for management of this action—which appear to indicate a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[18] This court found, in *Mattoon I*, that, *vis-a-vis* Mattoon, administrative remedies available are "wholly inadequate to settle his claim."[19] Except as they may overlap with the argument that deals with subsections (2) and (3)—to

be discussed later—City does not counter Mattoon's claim to class-action superiority status.

■ Subsection (3): City contends that Mattoon does not meet the standard which requires that "the claims or defenses of the representative parties be typical of the claims or defenses of the class." Mattoon's four acres are covered by the same Ordinance which covers the lands of the other Landowners. The restrictions of the Ordinance apply to all, and Mattoon states that under the Ordinance his claim is identical to that of the other Landowners. City argues that there is no class claim because "each situation will have to be analyzed, not only as to amount of damages, if any, but also as to what is the basis or cause of those damages, if any."

City speaks of proof of claims, and not of the claims themselves, when it refers to the need for separate analyses. Mattoon has alleged a taking in the constitutional sense, and that claim stands established as the settled law of the case by our opinion in *Mattoon I*. Apart from what must be proved in order for the claim to prevail, the claim itself remains common to those persons whose lands are affected by the Ordinance. We hence find sufficient "typicality" attributes of the representative claim to meet the standard imposed by subsection (3).[20]

■ Subsection (2): City argues that a class action is an improper vehicle for reaching controversies in which individual

15. *Perry*, supra note 5 at 941; *Blackie v. Barrack*, 524 F.2d 891, 900–901 [9th Cir. 1975], cert. den. 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75.

16. The range discovered is between 35, in *Philadelphia Elec. Co. v. Anaconda America Brass Co.*, 43 F.R.D. 452 (E.D.Pa.1968) and 2,000 in *Green v. Wolf Co.*, supra note 11.

17. *Perry*, supra note 5.

18. Mattoon lists three methods of handling individual damages after a favorable class action judgment has been obtained. 7A Wright & Miller, Fed. Practice & Procedure 120–121 (§ 1784). Mattoon recommends that commissioners be appointed to appraise the damages to each individual lot, block or tract, and then report their proposed awards to the court. Either individual or cumulative judgments could then be entered, with each class member obtaining his respective award.

19. *Mattoon I*, supra note 1 at 1350.
Presumably, a person similarly situated would claim issue estoppel as to the exhaustion of administrative remedies doctrine, ruled in *Mattoon I* not to be adequate for persons affected by the Ordinance.

20. *Perry*, supra note 5. Typicality standards do make allowance for some disparity. See *Green v. Wolf Corp.*, supra note 11.

questions of law or fact appear to be numerous. This is so because the statute requires that the questions of law or fact common to the class *predominate* over any questions affecting only individual members. The weakness in this argument is that the City has gone only halfway. Giving us a litany of possible questions which might apply only to individual landowners, City fails to reach for analysis the crucial element of the test—whether those very questions *preclude* the common questions of law or fact from being *predominant.* Predominance is a qualitative rather than quantitative matter [21] because *weight* of issues may outweigh their *number.*

When summarizing its case for the existence of varying questions of fact, City draws our attention to the trial court's comment in chambers that the "maintenance of the drainage structures in question has taken place in several locations around town." The statement is uncontroverted in Mattoon's reply brief, so it is assumed to be a finding of fact by trial court. City adds its own list of possible individual questions upon which it believes any liability must rest, as follows: "notice, diversion, natural watercourse, negligence, easement misuser, good faith, reasonable mitigation of damages, waiver, damages as 'taking' or consequential, hazardous activity, police powers, reasonableness, extra-ordinary flood, and purchase of the property subject to existing conditions." Some of the factors are negated by the terms of the Ordinance itself—making them as likely to be common questions as individual ones. Other factors relate to individual proof of damages, a variation which does not *per se* defeat a right to class relief.[22]

In *Mattoon I,* we stated that the question of fact to be tried here is whether the enactment of the Ordinance did result in such a *substantial* interference with, or impairment of, the use and enjoyment of the affected land that it constitutes a taking. This determination will necessarily call for assessment of the *degree* of interference which is an element implicit in its *substantiality.* It is this inquiry—essential to *every* claim—that may tip the preponderance scales in the direction of individual questions, so as to preclude class action certification.[23]

Mattoon, exhaustively briefing all the possible issues, relies most heavily on the "common grounds." Among these he lists: (1) certainty of flooding and (2) adoption of the Ordinance to outweigh the individual variance in the nature, impact and extent of taking, which is admitted in his Motion.[24] Mattoon treats the admitted variance in the nature, impact and extent of taking as a factor dealing with damages and hence one within the application of those federal cases which view differing damages and their

---

**21.** *Perry,* supra note 5; *Gold Strike Stamp Co. v. Christensen,* 436 F.2d 791, 793 [10th Cir. 1970]; *Esplin v. Hirschi,* 402 F.2d 94, 99 [10th Cir. 1968], *cert. den.* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 [1969]; *Boggs v. Alto Trailer Sales, Inc.,* 511 F.2d 114, 118 [5th Cir. 1975].

**22.** *Perry,* supra note 5.
In *State of Oklahoma, ex rel. Dept. of Transportation v. Hoebel,* Okl., 594 P.2d 1213 [1979] we discussed whether flooding may constitute a taking and followed the majority rule—that it may, "if the flooding *is severe enough* so as to effectively destroy or *impair* the land's usefulness." [emphasis supplied]. There, as in *Mattoon I,* we said the question of impairment is for the trier of fact. This demonstrates the individual nature of the issue of *severity,* or degree, of flooding as opposed to the common question of fact of enactment of the Ordinance.

**23.** *Bernard v. First National Bank of Oregon,* 275 Or. 145, 550 P.2d 1203 [1976]. If it appears likely that an issue will require separate adjudications in "enough instances" the case should not proceed as a class action. *See contra, Foster v. City of Detroit,* 405 F.2d 138 [6th Cir. 1968] where common questions were held to predominate under old Rules of Civil Procedure.

**24.** Shortly after the 1966 amendments to Rule 23, Court of Appeals for the Tenth Circuit held that the critical test in determining predominance of common over individual questions rests on the presence of "material variance" in *elements upon which liability is based. Esplin,* supra note 21, at 99; *Gold Strike,* supra note 21, at 793.

proof as not precluding *per se* a preponderance of common questions.[25]

We perceive here more than mere possibility of the predominance of individual matters. This is so because:

Inasmuch as the question to be submitted to the trier of fact is whether the interference with the use and enjoyment of land is substantial enough to constitute a taking without due process and that such a taking is to be measured by impairment,[26] we must weigh the importance of *damages*—conceded by both litigants to be an individual question—against the importance of *interference* and *impairment*—the element of taking—which is the alleged common ground for class-action certification. How much each individual landowner is impaired and how extensive is the interference with his rights to use and enjoy the property are the very questions which must be answered to determine the existence of taking without compensation. The employment of a standard solution in trying liability—treated as a common issue in the class action—and determining individual damages later will not work here. While the necessity for separately proving the loss for each class member does not ordinarily defeat a right to class relief, the individual questions and the common questions become so intertwined and interconnected as to make them impossible of separation and impossible to weigh for assessment of predominance. This is especially so in a case like this when proving each class member's loss is the very question the trier of fact is required to assess in order to determine what degree of interference or impairment exists. If the basic common questions cannot be separated from the individual questions, they cannot be weighed, and none can be said to predominate. Unless common questions can be found to predominate, the standards imposed by subsection (2) cannot be said to have been met.

Of course, our analysis discloses a very close question here. We refer to our discussion in *Perry*. There, we agreed with federal authorities which lean toward sustaining certification in the face of a close question as the "pragmatically correct action." They point out the conditional nature of class certification, as under our § 14, which should allow for alteration or amendment at any time before the decision on the merits.[27] However, we decline to substitute this recommended action for the trial court's considered judgment.

Under federal case law guidelines affirmance of a trial court's certification order is made easy. Affirmance of a trial court's order denying certification is shown in fewer leading cases, but reversal, which requires a clear showing of abuse of discretion, is not frequently supportable by these authorities.[28]

While courts may speak of "pragmatically correct action" when affirming a trial court's class-action certification in a close question, none has tested a refusal to certify by that criterion to justify a reversal. Abuse of discretion is still the measure.[29] We find none in the case before us. Our jurisdiction recognizes that class determination is one which should be made by the court in a practical and realistic manner, based on what is actually involved in the

**25.** *Eisen v. Carlisle & Jacquelin*, 479 F.2d 1005 [2d Cir. 1973], *vacated on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 [1974]; *Daar v. Yellow Cab Co.*, 67 Cal.2d 695, 63 Cal.Rptr. 724, 433 P.2d 732 [1967].

**26.** *Mattoon I*, supra note 1 at 1350, and see citations supra notes 22 and 23.

**27.** *Perry*, supra note 5, at 940.

**28.** *Certification affirmed: Perry*, supra note 5, *Gold Strike*, supra note 21; *Blackie v. Barrack*, supra note 15. *Denial of certification affirmed: Wilcox*, supra note 5; *Doctor v. Seaboard*

*Coast Line R.R. Co.*, 540 F.2d 699 [4th Cir. 1976]; *Bradley v. Southern Pacific Co., Inc.*, 486 F.2d 516, 518 [5th Cir. 1973]; *Hill v. American Airlines, Inc.*, 479 F.2d 1057, 1059 [5th Cir. 1973]. *Reversals: Esplin*, supra note 21; *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed.2d 22 [1940].

**29.** *Perry*, supra note 5 at 939; *Wilcox*, supra note 5; *City of New York v. International Pipe & Ceramics Corp.*, 410 F.2d 295, 298 [2d Cir. 1969].

litigation. No mechanical formula exists which can be applied to all cases.[30]

This is not to say that matters of inverse condemnation may not be certified as class actions in Oklahoma.

Within the broad discretion allowed in class-action certification, the trial court's order is not without support. A close question exists as to one of the five prerequisites for class-action certification, but the determination of the trial judge rests on sound analysis of the statutory requirements which have been placed at issue. If the trial judge did in fact fail to properly analyze, within the parameters allowed by our statutes,[31] the facts and materials placed before her, appellant Mattoon has not clearly demonstrated error.

■ The trial court's determination whether a suit can be maintained as a class action will not be disturbed on appeal unless the party challenging it shows an abuse of discretion.

The determination should always be keyed to the statutory criteria. When denying class-action status, the trial court should identify, on an adequate record and for reasons to be stated in the order, which of the five statutory prerequisites are absent.

AFFIRMED.

IRWIN, C. J., BARNES, V. C. J., and WILLIAMS, HODGES, LAVENDER, SIMMS and HARGRAVE, JJ., concur.

---

30.  *Perry*, supra note 5 at 941.

31.  *Price v. Lucky Stores, Inc.*, 501 F.2d 1177, 1179 [9th Cir. 1974]; *Wilcox*, supra note 5; *Boggs*, supra note 21.