Dear Representatives, Veitch
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
1. In the event that a landowner's royalty on a tract of landthat is covered by a pooling order exceeds a one-eighth (1/8)royalty, how is the royalty owner's interest determined for thepurposes of establishing his entitlement to the proceeds ofproduction from the spacing unit?
 2. Is the Oklahoma State Legislature constitutionallyempowered to change the method of computing a royalty owner'sinterest in production from a drilling and spacing unit?
¶ 1 Your request involves an analysis of 1985 amendments to 52O.S. 87.1 (1981), which changed the method to be used to determine the computation of royalty owners' interests in leased tracts of land that are included in spacing units covered by forced pooling orders.
 I.
¶ 2 Title 52 O.S. 87.1, as it existed prior to the 1985 amendments, provided that where a spacing unit encompassed two or more separately owned tracts, any royalty interest owners under a separately owned tract would share in one eighth (1/8) of "all
production from the well or wells drilled within the unit . . . in the proportion that the acreage of their separately owned tract or interest bore to the entire acreage of the unit." 52O.S. 87.1(d) (1981). When an oil and gas lease covering a separately owned tract had a royalty in excess of one-eighth (1/8) of production, however, or was subject to an overriding royalty, a production payment, or other obligation, then the working interest owner under that lease was required to pay the excess royalty or overriding royalty "out of his share of theworking interests from the well drilled on said unit." Id.
(Emphasis added).
¶ 3 In Shell Oil Company v. Corporation Commission,389 P.2d 951 (Okla. 1964), commonly known as the Blanchard case, the Oklahoma Supreme Court construed the pertinent portions of the then current version of 52 O.S. 87.1. The case involved a 640 acre spacing unit consisting of two separate tracts of land with separate mineral owners. Waldo Blanchard, who owned 320 acres of the minerals, had leased his interest to Sun Oil Company. W.R. Blanchard, who owned the other 320 acres, had leased his interest to Shell Oil Company. Each lessor had reserved a one-eighth (1/8) royalty and had authorized his lessee to separately dispose of the gas produced from his separate tract.
¶ 4 Following the completion of a successful gas well, Shell, W.R. Blanchard's lessee, began selling its portion of the produced gas to a pipeline company. Sun, Waldo's lessee, was unable to sell any gas to its purchaser. Sun made no royalty payments to Waldo, on the belief that its royalty obligations under its lease arose only when Sun began to market gas to its purchaser. Waldo Blanchard brought suit against Shell Oil Company, claiming that under then current 52 O.S. 87.1 (1961), he was entitled to a proportionate part of the royalty on gas sold on the spacing unit, even though all the gas sales on the unit up to that time had been made by another lessee.
¶ 5 The Oklahoma Supreme Court agreed with Waldo, noting that the statute as then written provided that "any royalty owner shall share in one-eighth (1/8) of all production" in the proportion that his acreage bears to the entire acreage of the unit. Shell Oil Co., supra, 389 P.2d at 954. The Court held that the statute superseded the language of the privately negotiated lease contracts which had authorized each lessee to market gas on his respective tract and which had reserved a one-eighth (1/8) royalty to the lessor of gas produced on his tract. Id., p. 954. The Court, however, contrasted the situation that would arise under the statute if a lease provided for a royalty in excess of one-eighth, for an overriding royalty, or for a production payment. In that situation, the Court found that the statute would require the lessee of the lease burdened with this obligation to pay the excess royalty, override or production payment out of the production from his working interest in the well. Id. Thus, under the Blanchard decision, as it construed the pre-1985 version of 52 O.S. 87.1, a lessor, who had retained a royalty interest in excess of one-eighth in his oil and gas lease would receive the excess portion only if his lessee were actually selling gas attributable to production on his tract of land, although that lessor would share proportionately in a one-eighth royalty on all gas produced on the spacing unit, regardless of whether his particular lessee was selling any gas.
¶ 6 In 1985, the Legislature amended the relevant portions of52 O.S. 87.1. The statute as amended now provides:
 In the event a producing well or wells are completed upon a unit where there are, or may thereafter be, two or more separately owned tracts, the first purchaser or purchasers shall be liable to any royalty owner or group of royalty owners holding the royalty interest under a separately owned tract included in such drilling and spacing unit for the payment of proceeds from the sale of production from the drilling and spacing unit. Each royalty interest owner shall share in all production from the well or wells drilled within the unit, or in the gas well rental provided for in the lease covering such separately owned tract or interest in lieu of the customary fixed royalty, to the extent of such royalty interest owner's interest in the unit. Each royalty interest owner's interest in the unit shall be defined as the percentage of royalty, including the normal one-eighth (1/8) royalty, overriding royalties or other excess royalties owned in each separate tract by the royalty owner, multiplied by the proportion that the acreage in each separately owned tract or interest bears to the entire acreage of the unit. The first purchaser or purchasers shall also be jointly and severally liable for the payment to each royalty interest owner of any production payments or other obligations for the payment of monies contained within the leases covering any lands lying within the drilling and spacing unit. Nothing in this act shall relieve a lessee or his assignees from any obligations imposed by the lease.
(Emphasis added).
¶ 7 In determining the meaning of a statute, the cardinal rule of construction is to ascertain the intention of the Legislature by resort to the statutory language. Walker v. St. Louis-SanFrancisco Ry. Co., 671 P.2d 672 (Okla. 1983). In this case, the language of the statute clearly shows an intention to amend the previous method under which a royalty owner's interest in a spacing or drilling unit was determined. Whereas the previous statute, as construed in the Blanchard case, provided that royalty owners in a unit would share in one-eighth (1/8) of all
production from the unit, the amended statute provides that each royalty owner shares in all production in the unit, to the extent of his "royalty owner's interest in the unit." 52 O.S.87.1(e) (1988). The statute amends the prior law by including an express definition of the phrase "royalty owner's interest in the unit," which definition is binding in the construction of the statute. Minnix v. State, 282 P.2d 772 (Okla. 1955). This term is defined as follows:
 [T]he percentage of royalty, including the normal one-eighth (1/8) royalty, overriding royalties, or other excess royalties owned in each separate tract by the royalty owner, multiplied by the proportion that the acreage in each separately owned tract or interest bears to the entire acreage of the unit.
52 O.S. 87.1(e) (1988).
¶ 8 While the term "excess royalty" is not itself defined in the statute, we can look to the context in which the same term was used in the previous version of the statute for assistance in determining its meaning. See, e.g., Letteer v. Conservancy Dist.No. 30 in Tulsa, Osage, Rogers and Washington Counties,386 P.2d 796 (Okla. 1963). In the previous version of the statute, the term "excess royalty" is used in the context of an oil and gas lease which "stipulates a royalty in excess of one-eighth (1/8) of the production." 52 O.S. 87.1 (1981). It is thus clear that the term "excess royalty" embraces a situation where a lessor (mineral owner) grants an oil and gas lease which provides for a retained royalty in excess of one-eighth (1/8) (such as a three-sixteenth (3/16) lease now common in the industry).
¶ 9 The effect of the amended statute is to pool a lessor's interest in all production on a unit to the extent of his defined "royalty owner's interest in the unit" in the same way that, under the predecessor statute, a royalty owner's interest was pooled to the extent of one-eighth (1/8) of production. For example, if a royalty owner in a particular tract has a three-sixteenth (3/16) royalty in that tract, he is now entitled by statute to three-sixteenth (3/16) of all production from the unit encompassing that tract, multiplied by the proportion that the acreage in that tract bears to the total acreage in the unit. The Legislature has deleted the language of the former statute which provided that royalties on a lease in excess of one-eighth (1/8) would be paid by the lessee of that lease exclusively out of the production attributable to that lessee's working interest. Thus, there is no longer any requirement that a working interest owner actually market oil or gas in order for a royalty interest owner on that lease to be entitled to payment on that portion of a royalty interest that exceeds one-eighth (1/8). An individual who has a three-sixteenth (3/16) royalty in a lease will now share in all production of the unit to the extent of his full royalty interest, adjusted to account for the proportion that the acreage of his tract bears to the entire acreage in the unit.
 II.
¶ 10 We recognize that 52 O.S. 87.1 as amended in 1985, changed the method of computing a royalty owner's interest in production from a drilling and spacing unit. The Oklahoma Supreme Court, however, has held that there is no protected constitutional or contractual interest in a particular statutory scheme for allocation of royalty and working interests that prohibits subsequent changes in that statute. In Seal v.Corporation Commission, 725 P.2d 278, 290 (Okla. 1986), appeal dismissed, ___ U.S. ___, 107 S. Ct. 1265, 94 L.Ed.2d 126
(1987), the Court stated:
 We simply cannot agree that parties have an accrued right to an allocation of proceeds of gas pursuant to 52 O.S. 87.1 as interpreted in Shell Oil Co. [the Blanchard decision]. The statutory allocation scheme which altered existing contract terms, like all legislation setting forth the terms on which private parties may execute contracts, is subject to revision or repeal. Moreover, the existence of an atmosphere of pervasive regulation of the natural gas industry strongly suggests the parties have no legitimate expectation that the statutory scheme was a stable, unchanging one. Interest owners thus must hold their interests with the knowledge that the State retains substantial regulatory power over those interests.
¶ 11 The revised version of 52 O.S. 87.1 also changed former law by clearly placing the responsibility on the first purchaser or purchasers for making payments to owners of royalty interests under spacing or drilling units. 52 O.S. 87.1(e) (1988). However, you should be aware that under 52 O.S. 540 (1988), the first purchaser and the owner of the right to drill may enter into an agreement under which proceeds are paid to the owner of the right to drill, who in turn assumes responsibility of paying the proceeds to royalty owners and others entitled thereto.
¶ 12 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. Pursuant to 52 O.S. 87.1(e) (1988), when a landowner'sroyalty on a tract of land which is covered by a pooling orderexceeds a one-eighth (1/8) royalty, the landowner is entitled toshare in all production from the drilling and spacing unit, tothe extent of his defined "royalty owner's interest in the unit."This interest includes the sum of the normal one-eighth (1/8)royalty, and any additional or "excess royalty," owned in eachseparate tract by that royalty owner, multiplied by theproportion that the acreage in each separately owned tract orinterest bears to the entire acreage of the unit.
 2. There is no vested constitutional right to any particularscheme for the allocation of royalties in a spacing unit, and,accordingly, the Oklahoma Legislature could lawfully amend 52O.S. 87.1 in 1985 to provide for a different method ofallocating such royalty interests.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
ROBERT A. BUTKIN ASSISTANT ATTORNEY GENERAL