1998 OK CIV APP 94

**Murlene MAYO and Ray Mayo, Earnest L. Dahl, Martha Dahl Woody, Odus M. Dahl and Mary Anita Dahl, Bertha Clingman, James Hatfield and Katherine Hatfield, Mildred Johnson and Delta Johnson, Wanda Wood, Clyde Buck, William Arthur Bennett and Betty Joyce Bennett, Anna G. Kynerd, W.C. Dahl and Ada Dahl, Douglas Sullivan,**

Aubrey Dahl, P.O. Dahl and Lena Dahl, Randy Dahl and Shirley Dahl, Kerby Dahl and Paula Dahl, Haskel Hatfield and Alma Hatfield, Tessamae Hatfield, Fern Thompson, and Mary Loafman, Plaintiffs/Appellants,

v.

KAISER–FRANCIS OIL COMPANY, a Delaware corporation, Texas Southwest Gas Corporation, a Texas corporation, Senex Pipeline Company, a Delaware corporation, Defendants/Appellees.

No. 89662.

Court of Civil Appeals of Oklahoma, Division No. 1.

Feb. 5, 1998.

Rehearing Denied Feb. 27, 1998.

Certiorari Denied June 17, 1998.

Richard L. Allen, Allen, Allen & Tack, Chickasha, for Appellants.

Frederic Dorwart, Tulsa, for Appellees Texas Southwest Gas Corporation and Senex Pipeline Company.

Keith F. Sellers, Holliman, Langholz, Runnels, Holden, Forsman & Sellers, Tulsa, for Appellee Kaiser–Francis Oil Company.

JOPLIN, Judge:

¶ 1 Appellants as owners of mineral interests underlying Sections 20 and 29, Township 6 North, Range 8 West, Grady County, Oklahoma, seek review of the trial court's order refusing to certify as a class all royalty owners, excess royalty owners, and working interest owners in Sections 19, 20, and 29 in Appellants' action against Kaiser–Francis Oil Company as operator of several wells and owner of a small leasehold interest in Sections 20 and 29, and Texas Southwest Gas Corporation and/or Senex Pipeline Co., the contractual purchaser of the gas from the wells and asserted affiliates of Kaiser–Francis, for alleged underpayment of royalties. In this appeal, Appellants continue to assert they satisfied each element necessary for class certification. We disagree and, accordingly, affirm the trial court's order.

¶ 2 In the early 1960's, Appellants and other mineral interest owners in the subject

sections (or their predecessors-in-interest) leased their various oil and gas interests in the subject sections to third parties (Lessees). In turn, the various Lessees entered into six gas purchase contracts with Oklahoma Natural Gas in 1962 which provided that ONG would purchase all gas from the leased wells during the life of the lease and pay a sum certain. Twenty six years later, in 1988, Texas Southwest bought an interest in some of the ONG contracts, purchasing production and selling the gas in turn to El Paso Natural Gas. Also in 1988, Kaiser–Francis acquired a small interest in existing oil and gas leases in Sections 20 and 29. These specific leasehold interests are covered by two of the six 1962 gas purchase contracts; that is, Kaiser–Francis was bound by the gas purchase contract initially entered into by its predecessor-in-interest with ONG which in turn assigned two of the contracts to Texas Southwest. Thereafter, Kaiser–Francis proposed and did drill two additional producing wells in Sections 20 and 29. All gas continued to be sold pursuant to the 1962 gas purchase contracts which were still in full force and effect, and the Appellants were paid according to the terms of the contract, apparently by their Lessees.

¶3 In 1993, Appellants brought suit against Kaiser–Francis, Texas Southwest and/or Senex alleging Appellants "entered into oil and gas leases covering Sections 20 and 29 . . . which may or may not be owned by [Kaiser–Francis, Texas Southwest, and/or Senex] . . . ," and the latter three conspired to underpay royalty pursuant to an alleged scheme by which Kaiser–Francis sold production to Texas Southwest and/or Senex at the contract rate then the latter resold the gas at a higher rate after payment of royalties based on the lower contract rate. Appellants sought designation of the case as a class action asserting this alleged scheme involved *all* mineral interest owners in Sections 29 and 30 in addition to a subsequent request to add all mineral interest owners in Section 19.

¶4 At the hearing on Appellants' motion to certify the class, the trial court focused on issues related to commonality, i.e., whether there were questions of law and fact common to the class. In this regard, the trial court found no privity between Kaiser–Francis and Appellants except as to those leases in which Kaiser–Francis owned an interest (and, consequently, those leases in which Texas Southwest/Senex was involved). That is, the trial court determined that Kaiser–Francis was only obligated to pay under the terms of its gas purchase contract and not pay other mineral interest owners unrelated to Kaiser–Francis who had entered into gas purchase contracts with purchasers unrelated to Kaiser–Francis or its affiliates. The trial court denied class certification, and Appellants appeal.

¶5 Oklahoma law permits one or more members of a class to sue on behalf of all members of the class only if all of each of the following four elements are found to be present: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; *and* (4) the representative parties will fairly and adequately protect the interests of the class. 12 O.S.1991 § 2023. Ordinarily, certification of a class is a decision which should be made by the trial court in a "practical and realistic manner, based on what is actually involved in the litigation," but "no mechanical formula exists which can be applied to all cases." *Mattoon v. City of Norman,* 1981 OK 92, 633 P.2d 735. Consequently, on review of an order granting or denying class action certification, we will not reverse unless the trial court's decision stands clearly affected by an abuse of discretion. *Mattoon,* 1981 OK 92, ¶ 29, 633 P.2d at 741. *See also, Abel v. Tisdale,* 1983 OK 109, 673 P.2d 836 (abuse of discretion requires a determination of whether the trial court's decision is against all reason and the evidence).

¶6 In the present case, the trial court made it clear from the bench that Appellants had failed to demonstrate the necessary commonality of issues by seeking to include in the proposed class each and every owner of a mineral interest in the subject sections regardless of a lack of any relationship whatsoever with Kaiser–Francis or its

affiliates, notwithstanding Appellants' argument that all such mineral interest owners had been underpaid, albeit most by third parties. We agree with the trial court. Any named owner with a mineral interest in a lease in which Kaiser–Francis is operator or retains an interest could pursue a cause of action against Kaiser–Francis and its affiliates for alleged underpayment of royalty. However, Appellants argue that Kaiser–Francis owed every mineral interest owner the full value of a one-eighth royalty by virtue of 52 O.S. § 540 and/or 52 O.S. § 87.1 notwithstanding lack of privity. In this regard, the trial court's findings from the bench indicate an implied determination that the validity of the gas purchase contracts—which were factually uncontroverted—were not superseded by 52 O.S. § 540 or 52 O.S. § 87.1 which sets out the duty to pay royalty and obligates either the operator or first purchaser of gas to pay Appellants one-eighth of the production after costs.[1] Appellants proffered no evidence that these statutes supersede a valid contract entered into at arms length and which was fair at the time it was executed. *See, Shell Oil Co. v. Corporation Commission*, 1963 OK 238, 389 P.2d 951.

¶ 7 This issue has been litigated numerous times in other jurisdictions with, admittedly, mixed results. However, we are persuaded by the reasoning of the federal district court in New York when, in explaining its findings in a similar case, stated:

> [T]he attempt of the plaintiff to include in her class not only beneficiaries of her own Trust, but beneficiaries of separate and distinct Trusts is akin to attempts by shareholders of one corporation to sue on behalf of the shareholders of all other like corporations.... Thus far the courts have limited the equitable remedies of the individual plaintiff only to actions involving the economic unit with which he is associated....

*Schaffner v. Chemical Bank*, 339 F.Supp. 329 (S.D.N.Y.1972). *See also, Baltimore Football Club, Inc. v. Superior Court*, 171 Cal. App.3d 352, 215 Cal.Rptr. 323 (1985) (ticket holder of professional football team could not sue on behalf of class of all ticket holders of professional football teams without showing he bought tickets from each team).

¶ 8 As we apply this analysis, we cannot say the trial court's decision to deny class certification stands affected by an abuse of discretion. That is, Appellants sought to certify a class regardless of the class members' contractual relationship with Kaiser–Francis, but we have previously noted herein that Appellants presented no evidence that either § 87.1 or § 540 superseded Kaiser–Francis' contractual rights and obligations with other owners of interests in the unit. In this regard, we also recognize that if Appellants were to attempt to certify a class of those mineral owners of interests in leases operated, owned, or affected by Kaiser–Francis and its alleged affiliates, Appellants would nevertheless have to demonstrate the class is so numerous that joinder of all members is impracticable. As the record does not contain sufficient evidence on this issue—and Appellants did not pursue this smaller class certification—we cannot say the trial court erred in

---

1. We do not read 52 O.S. 87.1 entitled "Common source of supply of oil—Well spacing and drilling units" as invalidating all contracts between a lessor (or its lessee, assignee, or successor) and a gas purchaser which does not specifically require the purchaser or operator to pay a full one-eighth royalty to the Appellants. Our conclusion is bolstered by the legislatures' 1992 and 1993 amendments of this statute; the 1990 amendment to the statute providing that nothing therein shall relieve a lessee or his assignees from any obligations imposed by the lease; the opinion of the 10th Circuit in *Panhandle Eastern Pipeline Co. v. State of Oklahoma ex rel. Commissioners of Land Office*, 83 F.3d 1219 (10th Cir.1996) that this same view obtained in 1985; the Oklahoma Supreme Court's opinion in *Shell Oil Co. v. Corporation Commission*, 389 P.2d 951 (Okla.1963), affirming the validity of gas purchase contracts from the same well pursuant to the terms of which the two producers paid different "royalties" to their respective lessors pursuant to separate contracts; and *Tara Petroleum Corp. v. Hughey*, 630 P.2d 1269 (Okla.1981), in which the Supreme Court reasoned that the volatility of the oil and gas industry often required parties to enter into long-term contracts for the sale of production at a price certain as a business necessity notwithstanding the price of oil and gas could increase over the life of the contract. Title 52 O.S.Supp.1993 § 570.10 merely devises a means by which working interest owners, first purchasers, and operators may pay royalty proceeds.

denying Appellants' requested class certification.

¶ 9 The order of the trial court denying class certification is therefore AFFIRMED.

BUETTNER, J., concurs.

HANSEN, P.J. dissents with separate opinion.

HANSEN, Presiding Judge, dissenting.

¶ 1 In reviewing the denial of class certification, the majority inappropriately decides the merits of Kaiser–Francis' defense, to wit, that the 1962 gas purchase contracts are still in full force and effect and control the relationship between the parties. Certainly if this is the case, Plaintiff/Appellants (Royalty Owners) lose on the merits. However, this issue has not been tried below and is not before us on appeal. I dissent because Royalty Owners' **claims** present issues of law and fact common to the class proposed for certification.

¶ 2 Royalty Owners sued to recover underpaid royalties. They allege and Kaiser–Francis admits Kaiser–Francis is the operator of the subject wells. Although the record contains no express statement those sections have been unitized, that fact may be inferred from Kaiser–Francis' reference to the subject wells being proposed and drilled pursuant to "applicable Joint Operating Agreements" and "orders of the Oklahoma Corporation Commission." Royalty Owners allege Kaiser–Francis has been selling the gas produced from these wells to its own subsidiaries, Texas Southwest and Senex, at prices substantially less than market value. They allege the subsidiaries then resell the gas at a much higher rate, while Kaiser–Francis pays royalties based on the rate paid by the subsidiaries.

¶ 3 In its defense, Kaiser–Francis alleges Royalty Owners' lessees entered gas purchase contracts in 1962 with ONG for the life of the lease. Texas Southwest bought an interest in those contracts from ONG in 1988. Kaiser–Francis asserts Royalty Owners' lessees are contractually obligated to sell gas to Texas Southwest at the price specified in the 1962 contracts. Kaiser–Francis acquired a small interest in several of the oil and gas leases in Sections 20 and 29 in 1988, and later acquired other small interests. It asserts it is contractually obligated to sell under the 1962 contracts as to its small leasehold interest, "but most of the sellers under the Gas Purchase Contracts are parties other than Kaiser–Francis."

¶ 4 Royalty Owners moved to certify the case as a class action, with the class defined as royalty owners, excess royalty owners, and other interest owners in Section 19 as well as Sections 20 and 29, claiming all had been similarly underpaid by Kaiser–Francis. The trial court's order denying certification of the class makes no specific findings on the statutory requisites under 12 O.S.1991 § 2023, but the hearing transcript reflects the sole deficiency found by the trial court related to commonality, i.e., whether there are questions of law or fact common to the class. The trial court focused on the lack of privity between Kaiser–Francis and Royalty Owners except as to those leases in which Kaiser–Francis owned an interest, stating "even if we were to certify a class, we certified Section 29, get Kaiser–Francis in it only, you really almost need to bring in the defendants—the other defendants if you want them to be obligated. Otherwise you get to the end—whether it's certified or not, you get to an end and say, well, Kaiser–Francis is only obligated to pay their own Lessor."

¶ 5 Denial of class certification will not be disturbed unless abuse of discretion is shown. *Mattoon v. City of Norman,* 1981 OK 92, 633 P.2d 735, 741. However, the trial court must have "applied the proper standard in deciding whether to certify a *class." Adamson v. Bowen,* 855 F.2d 668, 675 (10th Cir.1988).[1] The requirement of questions of law or fact common to the class is applied to the plaintiff's theory of the case, not to the defense theory. "It is not for the court to indulge in speculation as to the facts which, if established, would defeat the class suit theory."

1. "Our class action scheme closely parallels that provided in Rule 23 of the Federal Rules of Civil Procedure, and we may look to federal authority for guidance and enlightenment as to its rationale." *Shores v. First City Bank Corp.,* 1984 OK 67, 689 P.2d 299, 301.

*Railway Express Agency v. Jones,* 106 F.2d 341, 343 (7th Cir.1939). If class members' claims arise out of the same legal theory, the commonality requirement is satisfied. *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir.1977).

¶ 6 Liability for the payment of oil and gas proceeds to royalty interest owners repeatedly has been the subject of legislative attention. In 1990, the beginning of the time period for which Royalty Owners seek recovery, 52 O.S.Supp.1990 § 87.1(e) placed such liability on the first purchaser where a well spacing and drilling unit contained two or more separately owned tracts. In addition, 52 O.S.Supp.1990 § 540(A) required the first purchaser to pay oil and gas proceeds to the persons entitled thereto within specified time frames, but also permitted the owner of the right to drill and produce to be substituted for the first purchaser by an agreement under which such owner assumes the first purchaser's statutory responsibilities. Therefore, either Kaiser–Francis, as the owner of the right to drill and produce the subject wells, or Texas Southwest, as the first purchaser, had direct liability to each royalty owner for proper payment of royalties. The liability of the first purchaser or owner of the right to drill and produce to the royalty owner was in addition to and not instead of the lessee's liability; therefore, the identity of the lessee under any particular royalty owner's lease is irrelevant to the liability of Kaiser–Francis or Texas Southwest. 52 O.S.Supp.1990 § 540(B).

¶ 7 In 1992, the Legislature amended § 87.1 to delete the language ascribing liability to the first purchaser, and amended and renumbered § 540 as § 570.10 to incorporate it in the new, comprehensive Production Revenue Standards Act, 52 O.S.Supp.1992 §§ 570.1–570.15. The new § 570.10, effective July 1, 1993, provides in part,

A. All proceeds from the sale of production shall be regarded as separate and distinct from all other funds of any person receiving or holding the same until such time as such proceeds are paid to the owners legally entitled thereto. Any person holding revenue or proceeds from the sale of production shall hold such revenue or proceeds for the benefit of the owners legally entitled thereto.

It sets forth in paragraph (C) the conditions under which first purchasers, working interest owners, and operators may relieve themselves from liability for payment of royalty proceeds. A first purchaser may discharge its duty by paying proceeds from production to the producing owner or, at the producing owner's direction, to the royalty owners or the operator of the well. A working interest owner may discharge its duty by paying royalty proceeds to the royalty owners or the operator. An operator discharges its duty by paying proceeds received by it as operator to the royalty owners. In short, whoever is holding the royalty proceeds is liable directly to the royalty owners.

¶ 8 Under Royalty Owners' theory of the case, Kaiser–Francis or its subsidiaries are holding royalty proceeds based on the difference between the price paid by the subsidiaries to Kaiser–Francis and the price they received on resale. Should Royalty Owners prevail on the merits, they can be made whole through judgment against the named defendants. Their lessees are not necessary parties. Therefore, the claims of owners of royalty interests in wells operated by Kaiser–Francis where production has been sold to Texas Southwest or Senex arise out of the same legal theory.

¶ 9 The trial court applied an improper standard in deciding whether to certify a class by speculating as to the merits and assuming the defense theory proved. The majority continues this error. While it admits any owner in a lease where Kaiser–Francis is an operator could separately pursue a cause of action against Kaiser–Francis for underpayment of royalty, it disregards the relationship established when Kaiser–Francis steps into the shoes of the lease operator by becoming unit operator. Each of the lessors in the unit could separately pursue a claim against the unit operator for underpayment of royalty. That they are entitled to proceed separately does not prevent them from qualifying as a class. The majority, however, effectively has decided there has been no underpayment of royalty and therefore there must not be a class.

¶10 I would reverse and remand with instructions to certify the case as a class action with members of the class being owners of any type of royalty interest in the minerals underlying Sections 19, Sections 20 and 29, Township 6 North, Range 8 West of Grady County, Oklahoma. 20 and 29, Township 6 North, Range 8 West of Grady County, Oklahoma.